### A10A1816. TAYLOR v. WALDO et al.
(709 SE2d 278)

ADAMS, Judge.

Bobby Taylor sued two Villa Rica police officers for false imprisonment, assault and battery, and intentional infliction of emotional distress in connection with his arrest on June 10, 2007. The trial court granted summary judgment to the officers and denied Taylor's motion for reconsideration. Taylor appeals both orders.

Construed in favor of Taylor, the record shows that Kai Waldo and Troy Hammett, patrolmen for the City of Villa Rica police department, arrested Taylor without a warrant on June 10, 2007, during their investigation of an alleged hit-and-run accident between Taylor and Heather Davis that occurred four days earlier in a grocery store parking lot in Villa Rica. Taylor, who lives in Carroll County approximately two miles outside of Villa Rica's city limits, admits he was involved in an accident and that his trailer hitch hit Davis's wheel, but states that he left the scene after giving Davis his name and phone number because there was no damage to either car. Taylor admits that in the following days officers called him and asked him to come to the station for questioning but that he did not go because he felt that Davis was making false accusations against him.

On Sunday, June 10, Waldo and Hammett came to Taylor's house. The officers were "on the clock" for the Villa Rica police department at the time, wearing uniforms, and driving police vehicles. Waldo, who arrived before Hammett, knocked on Taylor's door and, when no one answered, walked around taking pictures of Taylor's truck. Hammett arrived, and Taylor opened the door. According to Taylor, Waldo asked who he was, Taylor stated his name, and Waldo asked for identification. As Taylor went into the house to retrieve it, the officers followed and asked if he had loaded guns in his home; Taylor said he did. Taylor told the officers that he had not invited them in, and he asked his wife to retrieve his driver's license while he stepped back outside on the porch with the officers.

When his wife returned with his wallet, Taylor opened his wallet and showed the license to the officers. According to Taylor, Waldo then "real aggressively" told Taylor to remove his license from his wallet so that he could have a better look at it. Taylor claims he did not have time to comply with the officer's request before he was taken down. But he also testified that he did not take out the license because, instead, he "stated to him, sir, can't you see that[,] and [I]

put it right in his face. I said, sir, can't you see that?" Waldo then "grabbed [Taylor] and threw [sic] [him] into the yard," which is approximately one step below his stoop; at the same time, Waldo told him he was under arrest for obstruction. Taylor testified that he did not physically resist the officer as he was being arrested. Hammett's testimony can be read to support Taylor's assertion that he did not resist the arrest.

The officers placed Taylor in handcuffs and left them on until they arrived at the police station. During the perhaps ten-minute ride, Taylor complained of chest pains and that the cuffs were too tight. Taylor stated that when they arrived, the officers left him in the back seat of the car, and "high-fived" each other twice while saying "[Taylor] fought the law and the law won." To address his medical concerns, Taylor was then taken to the hospital. He testified that he sustained bruises to his wrists, abrasions on his stomach, abrasions and other injury to one shoulder and one on the side of his face. He also asserts that, all in all, it was the most humiliating experience of his life; he has subsequently received some psychological counseling.

On February 22, 2008, Taylor filed suit against Villa Rica and the officers.[1] He alleged the officers' conduct amounted to false imprisonment,[2] assault and battery, and intentional infliction of emotional distress. The officers filed a motion for partial summary judgment on Taylor's false imprisonment claim and, later, a second motion on the remaining claims. Following a hearing, the court granted the officers' motions on all claims.

The trial court held the officers were entitled to summary judgment on the claim of false imprisonment because they lawfully arrested Taylor outside of their jurisdiction for obstruction that occurred in their presence. The court held that the officers were entitled to official immunity because Taylor had not raised a factual issue regarding actual malice by the defendants.[3]

Summary judgment orders are reviewed de novo. *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432) (1996). To prevail on a summary judgment motion, the moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" when looking at

---

[1] Taylor originally alleged that the officers were acting within the scope of their employment with Villa Rica and that, therefore, the city was liable under the doctrine of respondeat superior. Taylor later dismissed the City as a party.

[2] The officers occasionally refer to the false imprisonment claim as a false arrest claim.

[3] The court did not address whether Taylor's claims were premature because the underlying criminal case remained pending. On appeal, Taylor asserts that a jury acquitted him of hit-and-run on June 23, 2010.

the facts in the light most favorable to the other party. OCGA § 9-11-56 (c).

1. In essence, the trial court held as a matter of law and undisputed fact that the arrest was lawful because obstruction occurred in the officers' presence. Taylor contends that because the officers arrested him outside of their jurisdiction without a warrant, the trial court erred by holding that the arrest was lawful. He also contends there are material issues of relevant fact. We agree with the trial court.

In general, our state constitution restricts a municipal police officer from exercising powers outside city limits. Ga. Const. of 1983, Art. IX, Sec. II, Par. III (b) (2); OCGA § 40-13-30. Nevertheless, "[a] law enforcement officer may make an arrest without a warrant for an offense committed in his presence. OCGA § 17-4-20. This is true even if the arrest is outside his jurisdiction. [Cits.]" *Wells v. State*, 206 Ga. App. 513, 515 (1) (426 SE2d 231) (1992). See, e.g., *Delong v. Domenici*, 271 Ga. App. 757, 758-759 (1) (610 SE2d 695) (2005).

Taylor argues that the arrest was ultra vires and therefore no immunity can attach. He relies on part of comment g of Section 895D of the Second Restatement of Torts for the proposition that "An immunity protects an officer only to the extent that he is acting in the general scope of his official authority." But Taylor ignores the remainder of the same comment which explains that when an officer is engaged in discretionary conduct, he is immune even if his decision is wrong:

> In many cases an officer is under a duty to make a preliminary determination of whether he has the authority or jurisdiction. When he exercises discretion in making that decision and takes action pursuant to it, he is performing his official duty and will still be protected by the immunity for discretionary conduct, even though his decision is erroneous.

Restatement 2d of Torts, § 895D, Comment g. And making a warrantless arrest is a discretionary act. See *Delong*, 271 Ga. App. at 758-759; *Selvy v. Morrison*, 292 Ga. App. 702, 704 (665 SE2d 401) (2008). Thus, even if the officers did not have probable cause to arrest Taylor, they had the authority and discretion to arrest outside their jurisdiction for offenses committed in their presence. Their immunity, therefore, cannot be defeated by their decision to arrest outside of their jurisdiction. See generally *Selvy*, 292 Ga. App. at 705-706.

2. The court correctly held that the officers were protected by official immunity with regard to each of Taylor's claims. We agree.

Public agents are immune from liability for their discretionary acts unless they are done with malice or intent to injure:

> The doctrine of official immunity, also known as qualified immunity, . . . "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption." [Cit.] Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. [Cit.]

*Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001). See also *Delong*, 271 Ga. App. at 758. A showing of actual malice is required, which is more than ill will:

> [I]n the context of official immunity, actual malice requires a deliberate intention to do wrong, and denotes express malice or malice in fact. This definition is consistent with express malice which, in criminal law, is similarly defined as a deliberate intention to do an unlawful act. . . . Actual malice requires more than harboring bad feelings about another. While ill will may be an element of actual malice in many factual situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal.

(Citations and punctuation omitted.) *Adams v. Hazelwood*, 271 Ga. 414, 414-415 (2) (520 SE2d 896) (1999). "A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs." *Selvy*, 292 Ga. App. at 704. Taylor has not even argued that the record contains evidence of actual malice or intent to injure.

Our own review of the facts shows there is no evidence of actual malice or intent to injure with regard to the claim of false imprisonment. There is no evidence that the officers deliberately intended to wrongfully arrest and imprison Taylor. At most the evidence shows that Waldo was motivated by Taylor's display of the wallet and license and a belief that failure to follow his precise instructions automatically amounted to obstruction. See, e.g., *Selvy*, 292 Ga. App. at 705-706 (even if no probable cause existed for disorderly conduct arrest, without evidence of actual malice, immunity still applied).

There is no evidence of actual malice with regard to the charge of assault and battery. "The right to make an arrest or investigatory

stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." (Citation, punctuation and footnote omitted.) *Tittle v. Corso*, 256 Ga. App. 859, 863 (1) (569 SE2d 873) (2002). Here, construed in favor of Taylor, the facts only show that Waldo unnecessarily threw him to the ground and handcuffed him roughly. Without more, this evidence does not show that Waldo's "use of physical force was so excessive or unnecessary as to demonstrate a deliberate intent to do wrong." Id. See also *Selvy*, 292 Ga. App. at 705-706 (showing of actual malice or intent to injure requires more than "poor judgment, rude behavior, and reckless disregard for the rights and safety of others"). This Court came to the same conclusion based on similar facts in *Tittle* (threatening motorist with dog attack and slamming a motorist against his car) and *Selvy* (grabbing arrestee's arm, twisting it behind her back, slamming her face into the wall, as well as kicking her legs out from under her and inadvertently kicking her ten-year-old son in the process). See also *Valades v. Uslu*, 301 Ga. App. 885, 887 (689 SE2d 338) (2009) (officer pulled arrestee's hair, picked her up causing injury to shoulder, and threw her on the ground).

For many of the same reasons, we find no evidence of actual malice with regard to the claim of intentional infliction of emotional distress. Taylor testified that the officers ignored his complaints of chest pain. And the officers apparently celebrated their arrest and told Taylor at the station that if he did not get out of the patrol car on his own, he would not get medical help. But Taylor was in the car for, at most, ten minutes and in a holding cell for only "minutes" before emergency medical technicians began to assist him, whereupon he was taken to the hospital by ambulance. Even if the officers intended to upset Taylor, none of their actions can be considered wrongful or illegal. Compare *Gardner v. Rogers*, 224 Ga. App. 165 (480 SE2d 217) (1996) (arresting officer used excessive force to take arrestee into custody, took her to a school parking lot and concocted charges against her with another officer).

For the above reasons, the trial court's grant of summary judgment is affirmed.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 8, 2011 —
RECONSIDERATION DENIED APRIL 1, 2011 — 

*Gary P. Bunch*, for appellant.

*Gray, Rust, St. Amand, Moffett & Brieske, Althea S. Prince*, for appellees.