## A11A0460. MARSHALL v. BROWNING.
### (712 SE2d 71)

MIKELL, Judge.

Marion Marshall appeals the trial court's grant of summary judgment to police detective Silvia D. Browning in Marshall's suit for malicious prosecution. We find that Browning was entitled to official immunity for her actions in pursuing Marshall's prosecution for three counts of child molestation and one count of sexual battery. Accordingly, we affirm.

> To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the evidence and all reasonable inferences and

---

conclusions drawn therefrom, viewed in the nonmovant's favor, warrant judgment as a matter of law. We review de novo the trial court's ruling on a motion for summary judgment.[1]

So viewed, the evidence shows that in 2005 Marshall was employed as an elementary school teacher. Browning, then a detective with the Roswell Police Department, received a referral from the Fulton County Department of Family and Children Services regarding allegations made by two female students in Marshall's fourth grade class. Browning met with social worker Jennifer Bui, who indicated that two ten-year-old girls, J. M. and L. L., had separately reported that Marshall had asked them if he could touch them, that he had passed notes to the girls asking if he could touch them, that he had touched the girls, and that they felt uncomfortable about it. Bui also told Browning that in 2004 another student, ten-year-old A. S., had claimed that Marshall had conversations with her about trust and had touched her above the knee, but that A. S. had later recanted the allegations. Bui gave Browning a copy of her report, which included Bui's notes, findings, written statements from J. M. and L. L., written statements from the children's mothers, and Marshall's written denials.

Less than a week after Browning met with Bui, separate forensic interviews were conducted with A. S., J. M., and L. L. According to Browning, who witnessed the interviews, A. S. described an incident where Marshall pulled her into a storage closet, lifted her up by the waist to sit her on a chair, and hugged her for a long time. When she started to walk away Marshall touched the child's bottom with an open hand. During recess, Marshall told A. S. that he could lose his job and his family if she told anyone. A. S. went home and told her mother about the incident. A. S. admitted that she later changed her story but maintained that she did so because she was worried about Marshall losing his job and his family.

During J. M.'s interview, the child described a number of notes she exchanged with Marshall. In these notes Marshall inquired if he could touch her, and J. M. responded "yes." J. M. did not realize what Marshall meant by his request until he touched her shoulder and rubbed her arm. She then wrote him that he could not touch her. Marshall told J. M. not to tell anyone about the notes or the questions he asked her. He also asked J. M. if he could trust her and asked her to write down if she could keep a secret.

In her interview, L. L. said that Marshall had touched her on the

---

[1] (Footnotes omitted.) *Valades v. Uslu*, 301 Ga. App. 885, 886 (689 SE2d 338) (2009).

stomach, but that the touching may have been accidental. She also told the interviewer that Marshall had played with her fingers. L. L. reported that Marshall wrote her a note asking if he could touch her, and she answered "yes." He also wrote her notes asking if she could keep a secret and how he could know he could trust her. After Marshall tapped the child on her chest with a pen, she told Marshall that he could not touch her. When L. L. was taking a test in the back of the class Marshall handed her a note asking her if she was sure that she did not want him to touch her. She wrote back, "yes."

Three days after the children were interviewed Browning met with an assistant district attorney who, after being apprised of the facts, indicated that there was sufficient evidence to go forward with search and arrest warrants. Browning submitted affidavits to the magistrate and obtained search warrants for Marshall's residence and his classroom as well as four arrest warrants charging Marshall with three counts of child molestation and one count of sexual battery.

Browning and other officers executed the search warrant at Marshall's residence. Browning interviewed Marshall, who denied touching any of his students, denied discussing issues of trust or keeping secrets, and indicated that the allegations against him were a plot to get him in trouble. No physical evidence supporting the children's allegations was found in Marshall's home or on his computer. Marshall was arrested, taken to jail, and subsequently appeared before a magistrate judge and in superior court.[2]

During the summer and fall of 2005, Browning met with the district attorney's office on at least three occasions to discuss the case. Attorneys with the office performed their own investigation and determined that it did not appear that Marshall committed a felony offense. One of the attorneys, Eric Dunaway, deposed that, even assuming that the children were telling the truth, there was nevertheless insufficient evidence to present a felony charge to the grand jury. The district attorney's office sent the case to the solicitor-general for consideration of a misdemeanor prosecution. The solicitor-general determined that there was insufficient evidence to successfully pursue misdemeanor charges against Marshall. Accordingly, Marshall was not indicted for a felony or accused of a misdemeanor.

Marshall claims that the trial court erred (i) in holding that there was probable cause for Marshall's prosecution and (ii) in

---

[2] Browning does not contend that a prosecution was not carried on for purposes of Marshall's claim for malicious prosecution. See *McNeely v. The Home Depot*, 275 Ga. App. 480, 482 (621 SE2d 473) (2005) (evidence that plaintiff was brought before a judge raises an inference that he was taken before a committing court).

failing to hold that the prosecution of Marshall was with actual malice. We disagree because the evidence shows as a matter of law that Browning acted without actual malice for purposes of the threshold issue of her official immunity.[3]

Malice is an element of malicious prosecution and may be inferred by a total lack of probable cause.[4] Our initial inquiry, however, "is not whether [Browning] acted maliciously [for purposes of the tort of malicious prosecution], but . . . whether she acted with *actual* malice that would exempt her from official immunity."[5] Official or "qualified" immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption."[6] In Georgia, "a public officer may be personally liable only for ministerial acts negligently performed or for discretionary acts performed with malice or an intent to injure."[7]

We conclude, and Marshall does not dispute, that Browning, a police detective, was acting within her discretionary authority in investigating the case, obtaining search and arrest warrants, and in executing those warrants.[8] "Unlike a ministerial act, a discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."[9]

For purposes of official immunity,

> actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact. Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others. A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs. Likewise, the phrase "actual intent to cause injury" has been defined in a tort

---

[3] See *Anderson v. Cobb*, 258 Ga. App. 159, 160 (2) (573 SE2d 417) (2002) ("courts must consider the issue of a government employee's qualified immunity from liability as the threshold issue in a suit against the officer in his personal capacity") (citation and punctuation omitted).

[4] See OCGA §§ 51-7-40; 51-7-43; 51-7-44.

[5] (Emphasis in original.) *Anderson*, supra.

[6] (Punctuation and footnote omitted.) *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001).

[7] (Footnote omitted.) *Valades*, supra at 890.

[8] See, e.g., *Anderson*, supra at 160-161 (2) (holding that a county detective's decision to seek an arrest warrant was a discretionary act).

[9] (Citation and punctuation omitted.) *Reed v. DeKalb County*, 264 Ga. App. 83, 86 (589 SE2d 584) (2003) (official immunity applies to officer's mistaken belief that arrest is appropriate).

context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive.[10]

Applying the foregoing, we find that the evidence demands the conclusion that Browning acted without actual malice. There is no evidence that Browning was motivated by a personal animus toward Marshall. Nor is she accused of manufacturing evidence or knowingly presenting perjured testimony.[11] By contrast, Browning met with a district attorney before seeking arrest and search warrants, and she submitted affidavits in support of the warrants consistent with the evidence uncovered by her investigation. Marshall nevertheless contends that a jury could infer her malice from the questionable nature of the evidence against him and in light of Browning's calculated and considered decision to pursue his prosecution without probable cause that he committed a crime. Marshall also points to evidence that Browning was motivated by her subjective opinion of Marshall's guilt, as opposed to the objective facts, and he asserts that Browning took actions, such as swearing out an arrest warrant before executing the search warrant, which she knew would expose Marshall to embarrassment and expense.

Although Marshall attacks the children's statements as uncorroborated and lacking credibility, and he asserts that the forensic interviews were contaminated and suggestive, it is well established that a child's uncorroborated testimony may serve as evidence of child molestation.[12] Browning's decision to believe the children's accusations does not show actual malice toward Marshall.

Marshall also claims that Browning showed malice by proceeding with the prosecution notwithstanding that there was no probable cause to believe he had committed a crime. We have previously found that if a jury could make a reasonable inference that police officers arrested the plaintiff despite knowing that she did not commit the crimes for which they accused her, thereby deliberately intending to do a wrongful act, the officers were not entitled to summary judgment on her claims of wrongful prosecution and false arrest.[13]

---

[10] (Punctuation and footnotes omitted.) *Selvy v. Morrison*, 292 Ga. App. 702, 704-705 (665 SE2d 401) (2008).

[11] Compare *Price v. Cobb*, 63 Ga. App. 694, 696 (11 SE2d 822) (1940) (complaint for malicious prosecution alleged that solicitor-general instigated indictment by knowingly using false and perjured testimony).

[12] See, e.g., *Daniel v. State*, 296 Ga. App. 513, 515-516 (1) (675 SE2d 472) (2009) (refusing to overrule authority "that the uncorroborated testimony of a child victim is sufficient to support a child molestation conviction") (footnote omitted).

[13] *Bateast v. DeKalb County*, 258 Ga. App. 131, 132-133 (572 SE2d 756) (2002).

On the other hand, we have concluded that where an officer's decision to seek warrants might be characterized as "misguided" there was nevertheless no evidence that the actions were taken with actual malice for purposes of official immunity.[14] Similarly, "[a]bsent malice or intent to injure, no liability attaches to the officer's exercise of his lawful discretion even when the decision to effectuate the arrest is flawed."[15]

Given the facts of this case, we conclude that Browning's considered decision to proceed with arrest and search warrants on the basis of the children's statements cannot give rise to an inference that she acted with actual malice. A person commits the offense of child molestation when such person "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[16] In turn, "the law against child molestation . . . proscribe[s] acts which offend against the public's sense of propriety as well as . . . afford[s] protection to a child's body in those cases where the act or acts are more suggestive of sexually oriented misconduct than simply assaultive in nature."[17] The children's claims, if taken as true, show that Marshall hugged a child for an extended period of time in a storage closet, touched her bottom with an open hand, rubbed another child's arm, played with a child's fingers and touched her in the chest, all in the context of the passing of notes about trust and requests that the children, Marshall's students, not tell anyone about what Marshall was doing. Even assuming, for purposes of argument, that Browning was mistaken that the alleged acts rose to the level of child molestation, there was not such a lack of evidence of Marshall's guilt that a trier of fact could infer that Browning pursued Marshall's prosecution with the knowledge that he was not guilty and so intended to do wrong. In addition, Marshall's alleged touching of A. S.'s bottom met the definition of sexual battery.[18]

Marshall also points to evidence that Browning had acted on her subjective feelings, including a school employee's averment that Browning had announced to people in the office that she "had been

---

[14] *Todd v. Kelly*, 244 Ga. App. 404, 407 (1) (535 SE2d 540) (2000) ("Although Officer Kelly's actions in seeking warrants against Todd and Noble may have been misguided, there is no evidence that they were taken with actual malice").

[15] (Citation omitted.) *Reed*, supra at 87.

[16] OCGA § 16-6-4 (a) (1).

[17] *Chapman v. State*, 170 Ga. App. 779, 780 (1) (318 SE2d 213) (1984).

[18] See OCGA § 16-6-22.1 (b) ("A person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person"). Buttocks are considered an intimate part of the body. See OCGA § 16-6-22.1 (a).

molested as a child and she could just tell that Mr. Marshall was guilty." If Browning was motivated by her personal history and her perception that Marshall was guilty, this does not show an intent to do wrong. Moreover, Browning's affidavits in support of the search and arrest warrants were based on her investigation, not her personal feelings. As to Browning's decisions to execute the search and arrest warrants at the same time, to take Marshall to the Fulton County jail as opposed to the Roswell city jail, and to proceed with an arrest with knowledge of the embarrassment and expense that would inevitably ensue, Marshall fails to show that any of her actions were in violation of police procedure or were taken out of actual malice.

This case falls well within the underlying rationale for official immunity, which is "to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight."[19] Browning was presented with a difficult investigation, and a different investigator may have made choices more favorable to Marshall. Nevertheless, the evidence shows that Browning acted without actual malice, and she is therefore not subject to personal liability on Marshall's claim for malicious prosecution.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED MAY 13, 2011 —
RECONSIDERATION DENIED JUNE 16, 2011 — 

*England & England, J. Melvin England,* for appellant.
*Carothers & Mitchell, Richard A. Carothers, Michael E. Hobbs,* for appellee.

