**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 19, 2013**

# In the Court of Appeals of Georgia

A13A0060. WATKINS v. LATIF.

BARNES, Presiding Judge.

Lanier Watkins sued police officer Usman Latif for false imprisonment, and the trial court granted summary judgment to the officer. Watkins appeals, arguing that the trial court erred in finding that Latif was entitled to official immunity, but for the reasons that follow, we affirm.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). If a movant who does not bear the burden of proof at trial notes the absence of evidence to support an essential element of the respondent's case, the respondent must then identify evidence in the record giving rise to a triable issue. *Shannon v. Office Max N. Am.*, 291 Ga. App. 834, 835 (3) (662 SE2d 885) (2008). "We review a trial court's grant of summary

judgment de novo, construing the evidence and reasonable inferences in favor of the nonmoving party." Id.

So viewed, Officer Latif testified that after he saw Watkins roll through a stop sign and drive past him, the officer made a u-turn, activated his lights, and followed Watkins a short distance to his house. As the officer began to advise his dispatcher of his location, Watkins got out of his truck and began walking across the lawn to his house. At that point the officer called for backup because he was concerned about a potential threat. He thought it was "very unusual" for someone to get out of his car and walk away during a traffic stop. The officer got out of his patrol car, stood behind his door for cover, and ordered Watkins to get back in his car, which he did eventually. The officer retrieved Watkins' license and insurance information, went to the patrol car to write a ticket for failing to stop at the stop sign, and returned to Watkins' truck. Watkins was on his cell phone but complied with the officer's request to put the phone down and the officer explained the citation, the court date, and that signing the ticket was not an admission of guilt but acknowledgment of receiving the citation. The officer asked Watkins if he had any questions. Watkins responded that he was waiting for a supervisor and began talking on the phone again.

The officer realized that Watkins was on the phone with 911 dispatch requesting a supervisor, which he had a right to do. When someone requests a supervisor, standard procedure is for the officer to complete the task he is doing and then call for a supervisor, but since Watkins had already requested one, the officer attempted to finish the citation. He asked Watkins to sign the ticket but after he refused several times, the officer asked him to step out of the vehicle and arrested him for a stop sign violation and for failing to sign the ticket.

According to Watkins, he did not notice the patrol car pull up behind him with lights flashing when he parked in front of his house because he was focused on going inside after a long day at work. He testified that he got out of his car and had just stepped onto the grass when the officer began yelling at him to get back in his car. The officer repeated the command several times and put his hand on his gun "in a very, very intimidating way," so Watkins got back into his car and called 911 because he felt threatened and wanted "to have someone come out there and figure out what's going on." Officer Latif retrieved Watkins' license, notified Watkins about the stop sign violation, and returned to his patrol car. Watkins still felt that he was in danger because the officer's demeanor was stern and aggressive, and the record contains a

transcription of his conversation with the 911 dispatcher before and after Latif returned to the car with the ticket.

Watkins asked the dispatcher to stay on the phone with him until the supervisor arrived. When the dispatcher responded that he did not know how long it would take for a supervisor to arrive, Watkins replied that he had done nothing wrong, all he wanted to do was go into his house, and "all of this stuff is pure nonsense especially for a civil servant – someone who is supposed to serve and protect." The officer returned to Watkins' car with the ticket in hand and the 911 transcript included the following exchange:

Officer: Mr. Watkins?

Watkins: Yes sir?

Officer: Alright. You are being stopped for stop sign violation at Tejas Trail . . . [inaudible] . . . City of Atlanta, 151 8th Street. By signing this citation, [it] is not an admission of guilt but acknowledging the citation. Any questions about the citation?

Watkins: I have a supervisor coming and if you could just stay here until he gets there.

Officer: Ok, what I need you to do is sign the citation. I am going to ask you one more time to sign the citation or you will be taken to jail for obstruction.

Watkins: Ma'am do you hear this?

4

Operator: Yes sir.

Officer: Sir, are you going to sign the citation?

Watkins: Do I have to? Do I have to sign the citation?

Officer: No. You can go to jail if you don't though.

Watkins: So if I don't sign a citation, I can go to jail?

Officer: Sir I'm going to ask you one more time. Are you going to sign the citation or not? Yes or no?

Watkins: Do I have to sign the ci....

Officer: Okay – step out of the vehicle. Put the phone down and step out [of] the vehicle. Step out of the vehicle for me sir.

Watkins: Man I don't believe this.

Officer: Hands behind your back.

Watkins: Can I put my wallet back in my pocket?

Officer: We will take care of that for you sir.

Watkins testified that he was talking to the dispatcher when he asked if he had to sign the ticket or not and that he would have signed the ticket eventually. After a supervisor arrived on the scene and spoke to both Watkins and Latif, Watkins was

taken to the police station and then to jail, where he was booked, held for several hours, and released on his own recognizance. Both tickets were ultimately dismissed.

Watkins sued Officer Latif for false imprisonment, and the trial court granted summary judgment to the officer, finding that the arrest was a discretionary act and thus Latif was entitled to qualified immunity. On appeal, Watkins argues that the arrest constituted the violation of a ministerial duty, not a discretionary act, and therefore Latif was not entitled to immunity.

"Public agents are immune from liability for their discretionary acts unless they are done with malice or intent to injure." *Taylor v. Waldo*, 309 Ga. App. 108, 111 (2) (709 SE2d 278) (2011).

> The doctrine of official immunity, also known as qualified immunity, . . . protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure.

(Citations and punctuation omitted.) *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001). Public employees are given immunity for discretionary acts to

6

preserve their "independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight." Id.

Watkins does not argue that Latif acted with malice or intent to injure, only that his actions were ministerial in nature, and therefore that the trial court erred in finding that Latif was entitled to official immunity. He asserts that a police officer has a ministerial duty to not arrest someone for refusing to sign a citation, and therefore Latif is not entitled to immunity for arresting him under these circumstances, citing OCGA § 40-13-2.1 and *State v. Torres*, 290 Ga. App. 804 (660 SE2d 763) (2008).

OCGA § 40-13-2.1 (a) provides that a person who gets a traffic ticket "shall" sign it to acknowledge receiving the ticket and receiving notice of his obligation to appear for trial. The officer issuing the ticket "shall" advise the person that signing the citation is not an admission of guilt and that the person will have to post a cash bond if he fails to sign it. Refusal to sign the ticket "shall" constitute reasonable cause to believe that the person will not appear at trial and the officer may bring him "before a judicial officer or traffic violations bureau to post a bond as is otherwise provided by law."

Watkins argues that under OCGA § 40-13-2.1 (a) and the analysis in *Torres*, the officer had no discretion to arrest him after he issued the traffic citation. However,

7

the facts in *Torres* differ from the facts in this case. In *Torres*, an officer issued a citation for Torres' failure to obtain a Georgia drivers license within 30 days of becoming a resident, but Torres refused to sign it because no one told him he had to get a Georgia license. 290 Ga. App. at 805. After the officer asked if there was anything he could say to get Torres to sign the ticket, Torres said no, so the officer arrested him and then searched his car and found marijuana. Id. At a hearing, the officer admitted he was unfamiliar with the requirements of OCGA § 40-13-2.1 and did not tell Torres that signing the ticket was not an admission of guilt or that failing to sign it would require him to post a cash bond. Id. at 806. The officer also admitted that he did not arrest Torres to bring him before a judicial officer to secure a cash bond; he arrested him because he would not sign the ticket. Id. at 807. We held that the arrest was illegal because the officer did not fulfill the notice requirements of OCGA § 40-13-2.1, and therefore the trial court properly granted Torres' motion to suppress the evidence seized as a result of that arrest. Id. at 806-807. We also held that, once the officer issued the citation, he could not change his mind and decide to arrest Torres without fulfilling the notice requirements of OCGA § 40-13-2.1. Id.

The facts in this case are different. Here, the officer complied with the statutory requirement that he tell Watkins that signing the citation was not an admission of

8

guilt, only acknowledgment of the ticket and court date, and told him that if he did not sign, he would be arrested. When Watkins' counsel asked the officer if he had told Watkins that he would be required to post bond if he did not sign the ticket, the officer replied, "That's what being arrested means." When asked if Watkins could have posted a cash bond at the precinct or any other place rather than going to jail, Latif responded no.

Watkins argues that under *Torres*, it was "unlawful" for Latif to arrest Watkins for refusing to sign a traffic ticket "rather than complying with the requirements of OCGA § 40-13-2.1." Therefore, he contends, the police officer had no discretion to arrest him for refusing to sign the ticket, and his arrest constituted the violation of a ministerial duty for which Officer Latif was not entitled to official immunity. But *Torres* does not hold that an officer may never arrest someone for failing to sign a ticket. *Torres* holds that, once an officer decides to issue a citation rather than arrest someone for certain traffic violations, the officer must explain that signing the citation does not mean acknowledgment of guilt and that the consequence of failing to sign the ticket is having to post a cash bond. 290 Ga. App. at 806-807.

Neither *Torres* nor the statute address the situation in this case, in which the officer initially decided to issue a citation instead of a custodial arrest and complied

9

with the notice requirements of OCGA § 40-13-2.1. Under these circumstances, "[e]ven if, as [Watkins] argues, the officer's investigation and decision to arrest were flawed, the officer's decisions remained discretionary." *Reese v. City of Atlanta*, 261 Ga. App. 761, 762 (583 SE2d 584) (2003).

Because the act of arresting Watkins was discretionary, Watkins could overcome Officer Latif's immunity defense only by showing that Latif acted with malice or an intent to injure. *Cameron v. Lang*, 274 Ga. at 123. His only argument as to malice was that it "might be inferred from evidence suggesting that Mr. Watkins was arrested in retaliation for calling 911," but an inference of malice is insufficient to overcome his immunity defense. The 1991 amendment to Art. I, Sec. II, Par. IX, of the Constitution of the State of Georgia specifies that public officers "may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions," and "actual malice" does not include "implied malice." *Merrow v. Hawkins*, 266 Ga. 390, 391-392 (2) (467 SE2d 336) (1996).

Because the act of arresting Watkins was discretionary and no evidence establishes a question of fact regarding whether Latif acted with actual malice or an intent to injure, the trial court did not err in granting summary judgment to the officer.

10

*Judgment affirmed. Miller and Ray, JJ., concur.*