**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 11, 2014**

# In the Court of Appeals of Georgia

A13A1949. CITY OF ATLANTA et al. v. SHAVERS.  DO-099

DOYLE, Presiding Judge.

This appeal arises from a suit filed by Harry Shavers stating claims of false imprisonment and malicious prosecution against Atlanta Police Department Officer Governor Henderson and Razia Group, Inc.[1] The trial court denied Officer Henderson's motion for summary judgment filed on the basis that he was immune from suit, and this appeal followed. For the reasons that follow, we affirm.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c). If a movant who does not bear the burden of

---

[1] This Court denied Razia Group's application for interlocutory appeal in an order dated June 17, 2013.

proof at trial notes the absence of evidence to support an essential element of the respondent's case, the respondent must then identify evidence in the record giving rise to a triable issue. We review a trial court's grant of summary judgment de novo, construing the evidence and reasonable inferences in favor of the nonmoving party.[2]

Viewed in this light, the evidence shows that on July 1, 2010, Shavers drove his girlfriend's mother and aunt to a doctor's appointment and thereafter stopped at a Texaco Food Mart operated by Razia Group to purchase gasoline and lottery tickets and put air in his tires. Shavers and one of the women entered the store, while the other woman remained in the vehicle.

While Shavers was filling out lottery tickets within the store, he noticed two folded papers he believed to be blank while looking for a scrap on which to scribe his lottery numbers for the clerk; upon closer inspection, the items appeared to him to be money orders that had been left by another customer. Shavers picked them up and asked his companion if they belonged to her, and then he asked another customer if he had lost anything. A store employee, Kamrul Islam, overheard Shavers and asked what he had, in a demanding way, called him what Shavers believed to be a pejorative

---

[2] (Punctuation and citations omitted.) *Watkins v. Latif*, 323 Ga. App. 306, 306-307 (744 SE2d 860) (2013).

2

name. In response, Shavers told Islam about the discovery, and Islam demanded Shavers give him the money orders, which Shavers did not immediately do as a result of Islam's manner. Shavers instead told Islam that he would give him the money orders if Islam took his name and contact information in the event the owner was discovered and wished to reward Shavers. Islam refused to do so and instead came from behind the counter, threatening Shavers; Islam was not threatened by Shavers and did not feel intimidated in any way.

Thereafter, Islam then called 911, and while Shavers stood there, Islam told the operator that Shavers found two money orders and refused to give them to him. Shavers attempted to yell his version of events to the operator, but concluding that Islam was not going to back down from his demands, he placed the money orders on the counter and left the store to put air in his tires. Islam saw Shavers place the money orders down, which he told the 911 operator as well as Officer Henderson when he arrived on the scene. Instead of telling the operator that Shavers was in the parking lot tending to his vehicle, Islam stated that Shavers ran from the store; the operator radioed a description of the vehicle with a tag number and told Henderson that Shavers took $700 from the store.

3

As he was driving home, Shavers was stopped by multiple police cars, and he immediately pulled to the side of the of the road and did not resist. Officers including Officer Henderson approached Shavers brandishing their service weapons, and Shavers explained that he had found the money orders on the counter but left them in the store. Shavers was detained there while Officer Henderson went to the Texaco to investigate, where Islam told Henderson that Shavers had left the money orders, and where Henderson viewed the videotape from the security camera, which showed that Shavers had not taken the items. The remaining officers on the scene told Shavers that he would be allowed to leave if he had not taken the money orders, but despite learning that Shavers had not taken the items, Henderson returned to the vehicle and arrested him. Officer Henderson then took Shavers to a police station, where he was held for several hours, and Officer Henderson taunted Shavers, telling him that he was going "to make [the charges] stick" no matter what. Despite evidence to the contrary, Officer Henderson charged Shavers with felony larceny and transported him to jail; ultimately the charges were dismissed.

1. The City of Atlanta argues that the trial court erred by denying summary judgment to it. Shavers, however, concedes that the City is not a party to the lawsuit and filed pleadings in this Court waiving any claim against the City.

4

2. Officer Henderson contends that the trial court erred by denying his motion for summary judgment because he was entitled to official immunity for his acts.

(a) As an initial matter, Shavers has filed a motion to dismiss the appeal on the basis that Officer Henderson may not file an interlocutory appeal from the denial of summary judgment because the trial court's decision herein does not fall within the collateral order doctrine.[3] Shavers contends that a question of fact exists as to whether Officer Henderson acted with actual malice, and therefore, the issue of official immunity is no longer a purely legal question nor a "conclusive" determination that Officer Henderson is not immune from suit, excepting this appeal from the collateral order doctrine.

The trial court's order states that

this Court finds that the evidence of record raises an inference that Officer Henderson knew [Shavers] never left the store with the money orders in question. Furthermore, a jury could infer actual malice from the statements which Henderson allegedly made to [Shavers] about making the charges 'stick no matter what.' A jury shall consider the

---

[3] See, e.g., *Bd. of Regents v. Canas*, 295 Ga. App. 505, 506-507 (1) (672 SE2d 471) (2009) (holding "that an order that denies a motion to dismiss, based on a conclusive determination that the State (or a state officer or employee) is not immune from suit on the basis of sovereign immunity, meets the[] criteria" of the collateral order doctrine and is therefore immediately appealable).

5

many steps that Officer Henderson took to confirm that [Shavers] should be arrested prior to doing so; those steps do not, however, insulate Officer Henderson or the City of Atlanta from liability as a matter of law.

The trial court essentially determined that Officer Henderson was not protected by the doctrine of official immunity because facts existed from which a jury could make an inference of actual malice. This amounted to a final determination of the issue of qualified immunity from suit such that it is immediately appealable under the collateral order doctrine.[4] Accordingly, Shavers's motion to dismiss is hereby denied.

(b) Officer Henderson argues that the trial court erred by denying his motion for summary judgment based on qualified immunity.

Public agents are immune from liability for their discretionary acts unless they are done with malice or intent to injure: The doctrine of official immunity, also known as qualified immunity, protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. A showing of actual

---

[4] See id. at 506-507 (1). See also *Taylor v. Campbell*, 320 Ga. App. 362, 364 n.3 (739 SE2d 801) (2013). Compare *State of Ga. v. Gober*, 229 Ga. App. 700, 700-701 (494 SE2d 724) (1997).

6

malice is required, which is more than ill will: In the context of official immunity, *actual malice requires a deliberate intention to do wrong, and denotes express malice or malice in fact.* This definition is consistent with express malice which, in criminal law, is similarly defined as a deliberate intention to do an unlawful act. Actual malice requires more than harboring bad feelings about another. While ill will may be an element of actual malice in many factual situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal.[5]

Officer Henderson argues that under *Watkins v. Latif*,[6] the trial court erred because a finding of actual malice cannot be made based on an inference. In that case, however, this Court specifically stated that "Watkins does not argue that Latif acted with malice or intent to injure . . . ."[7] And in any event, "[i]mplied" in the context of "implied malice" constitutes reckless conduct rather than Officer Henderson's

---

[5] (Punctuation and citations omitted; emphasis supplied.) *Taylor v. Waldo*, 309 Ga. App. 108, 111 (2) (709 SE2d 278) (2011), quoting *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001); *Adams v. Hazelwood*, 271 Ga. 414, 414-415 (2) (520 SE2d 896) (1999); *Selvy v. Morrison*, 292 Ga. App. 702, 704 (665 SE2d 401) (2008).

[6] 323 Ga. App. 306 (744 SE2d 860) (2013).

[7] See id. at 309.

contention that a jury is barred from "inferring" — using the evidence to deduce or conclude — that he acted with "actual malice."[8]

> Under [Shavers's] version of the facts, which we must accept, [Officer Henderson knew that Shavers did not steal any property from Texaco] prior to the time that [he] decided to arrest [him]. This, in turn, would allow a jury to make a reasonable inference that [Officer Henderson] proceeded in [his] arrest of [Shavers] despite [his] knowledge that [there was no probable cause for such arrest], thereby [establishing that the officer] deliberately intend[ed] to do a wrongful act.[9]

Therefore, Officer Henderson's argument fails, and the trial court did not err by denying his motion for summary judgment based on qualified immunity.

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[8] See *Merrow v. Hawkins*, 266 Ga. 390, 391-392 (1) (467 SE2d 336) (1996) (holding that implied malice is reckless disregard as compared with actual malice which is an intent to do wrong).

[9] *Bateast v. DeKalb County*, 258 Ga. App. 131, 132 (572 SE2d 756) (2002).