**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 8, 2015**

# In the Court of Appeals of Georgia

A15A0781. HUTCHINSON v. WHALEY et al.

MCMILLIAN, Judge.

Carmen M. Hutchinson appeals, pro se, the trial court's order dismissing her claims of "public records right violation,"[1] "denying right to due process/Breached duties as investigators," and "deliberate indifference" against Andrew Whaley and W. L. Fountain, detectives with the Gwinnett County Police Department (collectively "Defendants").[2] In two related enumerations of error, Hutchinson asserts that the trial

---

[1] Hutchinson eventually conceded at the trial level that there is no private cause of action for violations of public records under OCGA § 45-11-1 (a).

[2] Although the trial court's order states that it is granting the Defendants' motion to dismiss, it is clear from the order that the trial court considered evidence outside of the pleadings, including evidence submitted by Hutchinson in her opposition to the motion. Accordingly, the trial court in effect converted the motion to dismiss into a motion for summary judgment. See, e.g., *S-D RIRA, LLC v. Outback Property Owners' Assn.*, 330 Ga. App. 442, 446, n. 9 (765 SE2d 498) (2014).

court erred in granting Defendants' motion for lack of subject matter jurisdiction after finding that Defendants are entitled to sovereign and/or official immunity. Having carefully considered her arguments, we find no error and affirm.

The record shows that on February 9, 2012, Hutchinson contacted the Gwinnett Police Department and reported that her 16-year-old daughter, Chelsea, "left on foot."[3] This was not the first such call made by Hutchinson. The multiple 911-call history details produced in response to Hutchinson's open records request show that Chelsea had a troubled history. On January 18, 2012, Hutchinson reported her daughter as missing when she did not return home from school. That case was closed on the same day. Then, on January 30, 2012, police received multiple reports of Chelsea's public indecency, and Hutchinson reported that Chelsea had suffered from a psychotic break and was staying at Peachford Hospital following a suicide attempt.

A few days later, Hutchinson reported that Chelsea claimed to have been assaulted by a man who attempted to rape and drown her. However, when the detective assigned to the case contacted Hutchinson, she claimed that her daughter had changed her story and no one had ever attempted to rape her. The detective

_____

Hutchinson does not object to this conversion on appeal.

[3] Chelsea was about to turn 17 years old on February 20, 2012.

followed up with Hutchinson on February 9, 2012 and made an appointment for her and Chelsea to come in the next day to get a statement from Chelsea. However, it was later that day that Hutchinson reported her daughter left home.

Although Hutchinson claims that she reported her daughter as a missing person, the call was documented as a reported "runaway." The call history also indicates that Chelsea had recently been released from Peachford Hospital but "was not diagnosed w/ a mental disease." The next day, Hutchinson requested that officers search the lake near her home, and the call report indicates that officers "S22ed the lake with AIR1 C4 no contact. Two males fishing stated that they saw a girl matching the 56R at 1830 walking from the woods tow[a]rds SR124."

And according to the incident report prepared by Detective Fountain, who was assigned to the case, Chelsea had a "history of running," and while being treated at Peachford, she tested positive for marijuana and amphetamines. Detective Fountain issued a BOLO (Be on the Look Out) and spoke with officials at Chelsea's school, who told him she had not attended school in over a month. He also reviewed the contents of her cell phone and spoke with several of her friends identified in her contacts. Everyone he spoke to stated that several days before she ran away, Chelsea "began to act strange" and they "suspected she was hanging with people that deal and

3

use drugs." Detective Fountain attempted to contact the father, but the address provided to him was not valid. He also reviewed Chelsea's Facebook page and found what he believed to be messages from her on February 22, 2012. He explained to Hutchinson that her daughter must be okay if she was responding on Facebook. After finding no other information regarding Chelsea's whereabouts after she turned 17 years old, he suspended the case.

On August 4, 2012, police received a call regarding skeletal remains found in a nearby creek bed. A press release and statewide notification was issued to determine the identity of the remains. Detective Whaley, who was assigned to the investigation, fielded several calls regarding possible matches before receiving a call from a man who stated that his niece, Chelsea, had been missing for six months. His description of her clothing and physical appearance indicated a likely match. Although Detective Whaley obtained dental records from the family, the medical examiner was unable to make a positive match. Detective Whaley then met with Hutchinson on August 14, 2012 to obtain a DNA sample, which was sent for testing. The remains were then confirmed to be Chelsea's, and a death certificate was completed by the medical examiner on December 31, 2012.[4]

---

[4] The medical examiner was unable to determine the cause of death.

On January 17, 2014, Hutchinson filed her pro se complaint against the Defendants. Following discovery, Defendants filed a motion to dismiss on grounds of sovereign and official immunity. Plaintiff filed an opposition to the motion, attaching various discovery documents, including 911-call histories and police incident reports. On October 6, 2014, the trial court issued an order granting the Defendants' motion, finding that Hutchinson's claims against the Defendants in their official capacity are essentially claims against Gwinnett County, and such claims are barred by sovereign immunity. And although it is not clear whether Hutchinson intended to also bring claims against the Defendants in their individual capacity, the trial court further found that Hutchinson's claims were only for ordinary negligence and that she had made no allegation of actual malice or actual intent to injure in the performance of their official functions. Therefore, her claims were also barred by the doctrine of official immunity. This appeal followed.

1. Hutchinson essentially argues that the Defendants failed to adequately investigate her daughter's case, including by failing to interview neighbors, witnesses, or canvas surrounding areas outside their residence and by failing to file a missing child report. The trial court correctly found that sovereign immunity extends to counties and that such immunity protects county employees who are sued

5

in their official capacities. See, e.g., *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001) (sovereign immunity applies to public employees sued in their official capacities because these "are in reality suits against the state") (citation and punctuation omitted). Moreover, Hutchinson has not asserted that the immunity has been waived by an Act of the General Assembly or by the Constitution itself. See *Ga. Dept. of Corrections v. Couch*, 295 Ga. 469, 472 (2) (759 SE2d 804) (2014).

With respect to Hutchinson's presumed claims against the Defendants in their individual capacities, the question of whether they are protected under the doctrine of official immunity turns on whether the acts complained of were ministerial or discretionary when, as in this case, there is no evidence that the Defendants acted with malice. See *Grammens v. Dollar*, 287 Ga. 618, 619 (697 SE2d 775) (2010) (where there is no evidence defendant acted or failed to act with malice, wilfulness, or an intent to injure, the question is whether the act was ministerial or discretionary). Georgia courts have repeatedly explained,

> [a] ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails

6

> examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

(Citation omitted.) Id. And we have held that a police officer's investigative decisions are discretionary.[5] See, e.g., *Watkins v. Latif*, 323 Ga. App. 306, 311 (744 SE2d 860) (2013); *Marshall v. Browning*, 310 Ga. App. 64, 67 (712 SE2d 71) (2011) (police detective was acting within her discretionary authority in investigating the case).

Although Hutchinson may understandably have wished for the Defendants to have done more in their investigation, "[t]his case falls well within the underlying rationale for official immunity, which is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight." (Citation and punctuation omitted.) *Marshall*, 310 Ga. App. at 70 (although defendant "was presented with a difficult investigation, and a different investigator may have made choices more favorable to [plaintiff,] . . . the

---

[5] Hutchinson points to OCGA § 35-1-8 (a) (regarding the acquisition and preservation of information to assist in identifying deceased individuals) and OCGA § 35-3-83 (regarding missing child reports) as evidence that the Defendants violated their duties to investigate. However, both statutes are directed to law enforcement *agencies*, not individual officers. And as noted above, county agencies are protected by sovereign immunity.

evidence shows that [defendant] acted without actual malice, and she is therefore not subject to personal liability on [plaintiff]'s claim.")

2. Hutchinson also asserts on appeal (although not separately enumerated) that she has a claim under 42 USC § 1983 and that her rights to due process and equal protection were violated. However, she fails to support these assertions with any cogent argument or citation of authority; therefore, they are deemed abandoned. See *Levine v. SunTrust Robinson Humphrey*, 321 Ga. App. 268, 275 (2) (b), n. 25 (740 SE2d 672) (2013). Moreover, this Court has held that while a police officer's investigation may be less than perfect, "inadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, do not warrant redress under 42 USC § 1983." (Citation and punctuation omitted.) *Stephens v. Zimmerman*, __ Ga. App. __, __ (2) (A15A0297 decided July 14, 2015) ("police officers are not required to perform error-free investigations").

Accordingly, the trial court did not err in granting summary judgment to Defendants.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*