**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 10, 2017**

# In the Court of Appeals of Georgia

A16A1572. MERCADO v. SWOOPE.

MCMILLIAN, Judge.

Following his arrest for scalping tickets, Bobby Rydell Swoope filed suit against Atlanta Police Officer Nicholas Mercado, asserting, among other counts, a claim for false imprisonment. After a trial, the jury returned a verdict in favor of Swoope. Mercado now appeals the trial court's denial of his motion for judgment notwithstanding the verdict ("j.n.o.v."), enumerating as error the trial court's failure to find that he is entitled to official immunity. For the reasons that follow, we agree and reverse the judgment in favor of Swoope.

In reviewing the denial of a motion for j.n.o.v., this Court "must affirm if there is any evidence to support the jury's verdict, and in making this determination, we must construe the evidence in the light most favorable to the prevailing party."

(Citations and punctuation omitted.) *Wright v. Apartment Investment and Mgmt. Co.*, 315 Ga. App. 587, 588 (726 SE2d 779) (2012). "The determinative question is not whether the verdict and the judgment of the trial were merely authorized, but is whether a contrary judgment was demanded." (Citation and punctuation omitted.) Id.

So viewed, the evidence shows that on the morning of January 20, 2013, Swoope purchased a ticket to the NFC Conference Championship Game from a friend for $200. Swoope arrived at the Georgia Dome some time later that day and sat at the railing on the sidewalk leading up to the entrance before the game began. According to Swoope, as he was sitting on the rails, a man and a woman who appeared to be a couple, approached him and said they needed two tickets to the game. He told the couple he only had one ticket and that he planned to use it himself. The couple then spoke to a gentleman standing nearby, who although unknown to Swoope, was later identified as Gerald Jones.[1] Swoope testified that the next thing he knew, an officer came up and placed him under arrest for scalping. He and Jones were transported to

---

[1] At trial and on appeal, Swoope concedes that he was standing near Jones.

a mini precinct and issued a citation. Swoope later appeared in court to address the citation but was not convicted of the charge.[2]

In September 2013, Swoope filed a civil suit against the City of Atlanta (the "City") and Mercado, both individually and in his official capacity, asserting claims of false arrest; false imprisonment; malicious prosecution; negligent hiring, training, and supervision; negligence; and invasion of privacy. Following discovery, the defendants moved for summary judgment on the grounds that Swoope's claims against the City are barred by the doctrine of sovereign immunity and that Mercado is entitled to official immunity. The trial court granted the motion with regard to all claims against the City and against Mercado in his official capacity.[3] However, the trial court found that, although the warrantless arrest of Swoope was a discretionary act, an issue of fact remained regarding whether Mercado acted with actual malice, thus precluding summary judgment on the claims against Mercado individually. Thereafter, the case proceeded to trial.

---

[2] There is some indication in the record that the charge was dismissed because Swoope was mistakenly cited under the wrong city ordinance.

[3] For a further explanation of the separate doctrines of sovereign immunity and official immunity, see *Tattnall County v. Armstrong*, 333 Ga. App. 46, 48-50 (1) (775 SE2d 573) (2015), overruled on other grounds, *Rivera v. Washington*, 298 Ga. 770 (784 SE2d 775) (2016).

Mercado's testimony at trial disagreed sharply with Swoope's version of events. Mercado testified that he and Investigator Katie Reister, his partner that day, were working an undercover scalping detail along with a "takedown team." As part of that detail, they were instructed to look for people scalping tickets and to identify anyone selling fake tickets. When Mercado and Reister arrived, they saw Jones holding tickets. Mercado and Jones made eye contact and walked toward each other, and Jones said that he wanted $360 for his tickets. According to Mercado, Swoope then interjected himself and said he had a ticket. Mercado asked him how much he wanted, and Swoope told him to make him an offer. Mercado told him, "It's your ticket. It's your price." Swoope responded that he wanted $250, and Mercado agreed after seeing that he had an actual paper ticket. Mercado then gave his takedown signal and nearby officers came over and arrested Jones and Swoope. Mercado and Reister quickly moved on to find other scalpers and had no further contact with Swoope that day. Reister testified that while Jones was their initial focus, she and Mercado believed that Jones and Swoope were working together. At trial, Swoope continued to deny that he approached Mercado, but admitted on cross-examination that he told Mercado "if I was selling tickets, he would have to make me an offer," but claimed that he was "probably laughing and joking."

At the close of the plaintiff's evidence, Mercado moved for a directed verdict. Although the trial court questioned whether there had been "any evidence of a deliberate intent to do wrong," it ultimately denied the motion, finding "there may be slight evidence" of malice.[4] At the close of all evidence, Mercado renewed his motion for directed verdict, which the trial court again denied. The jury returned a verdict in favor of Swoope and awarded him $19,240. Mercado then moved for a j.n.o.v. After the trial court denied the j.n.ov., this appeal followed.

In his sole enumeration of error, Mercado asserts that the trial court erred in finding that he was not entitled to official immunity. "The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity." *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001). "Because the rationale for qualified immunity is to protect the independent judgment of public employees without potential threat of liability, . . . a court must consider as a threshold issue whether the officer is entitled to qualified immunity from personal liability in a lawsuit for damages." Id. at 122.

---

[4] At that point, Swoope withdrew his claims for malicious prosecution and false arrest, leaving only the false imprisonment claim remaining.

The 1991 Amendment to the Georgia Constitution provides that public employees "may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d). The decision to make a warrantless arrest, such as the one at issue here, is considered a discretionary act within the scope of the officer's official functions. See *Taylor v. Waldo*, 309 Ga. App. 108, 110 (1) (709 SE2d 278) (2011). We must therefore determine whether there was any evidence to support the jury's verdict that Mercado acted with actual malice or actual intent to injure Swoope.

Our Supreme Court has held that, in the context of official immunity, "'actual malice' requires a deliberate intention to do wrong." *Merrow v. Hawkins*, 266 Ga. 390, 391 (467 SE2d 336) (1996) (actual malice is more than implied malice or reckless disregard for the rights of others). "A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiff[]." (Citation and punctuation omitted.) *Selvy v. Morrison*, 292 Ga. App. 702, 704 (665 SE2d 401) (2008). And an actual intent to cause injury has been defined as "an actual intent to cause harm to the

6

plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive." (Citation omitted.) Id. at 705 (finding no jury question of malice, despite evidence that officer initially left plaintiff's home then yelled "F[***] this shit, arrest that b[****] too!", yelled for her to open the door or he would kick it in, slammed her face into the wall, and kicked her legs out from under her, causing her son to get injured in the process before charging her with disorderly conduct).

However, the "public officer or employee's subjective feeling or mental state is irrelevant unless it prompts him or her to intend to do a legally unjustifiable action." (Citation and punctuation omitted.) *Delong v. Domenici*, 271 Ga. App. 757, 759 (610 SE2d 695) (2005), overruled on other grounds, *Zilke v. State*, 299 Ga. 232, 235 (787 SE2d 745) (2016). "All that is required for a lawful warrantless arrest is probable cause. To determine whether probable cause existed, we look at the facts within the officer's knowledge at the moment of arrest." Id. Thus, even if it is later determined that the plaintiff had not committed the crime for which he was arrested, the legitimacy of the officer's actions would not be negated if at the moment of arrest he reasonably believed the plaintiff had committed the crime. Id.

Here, construing the evidence to support the jury's verdict, Swoope admitted that he was standing near Jones, who he does not dispute was scalping tickets, and that Swoope told Mercado to "make him an offer" for the ticket, albeit allegedly as a joke. Under these circumstances, Mercado's belief that Swoope was selling his ticket too was reasonable, and the arrest was therefore legally justifiable. See *Delong*, 271 Ga. App. at 760. "Even when an arresting officer operates on a mistaken belief that an arrest is appropriate, official immunity still applies." (Citation and punctuation omitted.) *Selvy*, 292 Ga. App. at 706, n.17. "Our task is not to decide, with the benefit of hindsight, what the officers should have done. We are concerned only with whether their behavior showed a deliberate intention to commit a wrongful act." (Citation and punctuation omitted.) Id. at 707.

"Applying the foregoing, we find that the evidence demands the conclusion that [Mercado] acted without actual malice. There is no evidence that [he] was motivated by a personal animus toward [Swoope]. Nor is [he] accused of manufacturing evidence or knowingly presenting perjured testimony." *Marshall v. Browning*, 310 Ga. App. 64, 68 (712 SE2d 71) (2011). Cf. *Gardner v. Rogers*, 224

8

Ga. App. 165 (480 SE2d 217) (1996);[5] *City of Atlanta v. Shavers*, 326 Ga. App. 95

(756 SE2d 204) (2014), overruled on other grounds, *Rivera v. Washington*, 298 Ga.

770 (784 SE2d 775) (2016);[6] *Lagroon v. Lawson*, 328 Ga. App. 614 (759 SE2d 878)

(2014) (physical precedent only).[7] Thus, even after giving Swoope every benefit of

---

[5] In that case, a police officer completed an interview with a suspect at her house and told her that he was not going to arrest her at that time. But when the suspect tried to shut her door, the officer pushed his way back in, used physical force to take her into custody and then took her to another location where he discussed with a colleague how to devise grounds on which to arrest her. We found that evidence created a jury question concerning whether the officer had actual malice against the plaintiff. *Gardner,* 224 Ga. App. at 169 (4).

[6] There, following a mistaken report that the plaintiff had stolen abandoned money orders from a gas station, police arrived and viewed the videotape from the store's security camera, which showed that plaintiff had not taken the items. *Shavers*, 326 Ga. App. at 96. Despite learning that the plaintiff had not taken the items, the officer arrested him and took him to the police station where he was held for several hours. Id. The officer taunted him, telling him he was going "to make the charges stick" no matter what. The officer charged him with felony theft by taking and transported him to jail; the charge was ultimately dismissed. Id. This evidence was sufficient to create a question of actual malice for the jury. Id. at 98-99 (1) (b).

[7] In *Lagroon*, there was evidence that officers used threats to pressure teenaged eyewitnesses into giving false statements against the plaintiffs. 328 Ga. App. at 619 (2) (a). In addition, an officer detained one of the plaintiffs overnight before interviewing her, and then he did not question her about the charges, but instead questioned her about her estranged husband, whom he knew. Id. at 617 (1). The officer taunted her, telling her he had her husband's cell phone number and would call him to come to the sheriff's office and that he would be personally testifying against her in her divorce action. Id. We found a jury could infer from this evidence that the officers acted with actual malice. Id. at 619 (2).

the doubt, we cannot conclude that he presented evidence that could authorize a finding of actual malice sufficient to pierce the shield of official immunity. Accordingly, the trial court erred in denying Mercado's motion for j.n.o.v.

*Judgment reversed. Miller, P. J., and McFadden, P. J., concur.*