## A08A0440. SELVY et al. v. MORRISON et al.
### (665 SE2d 401)

PHIPPS, Judge.

On behalf of herself and her minor son, Anita Kae Selvy brought an action asserting claims of assault, battery, false arrest, and false imprisonment against three law enforcement officers, Daniel Morrison, Tim Poarch and Jay Marquez.[1] The trial court granted summary judgment to the officers, finding them entitled to official immunity, and Selvy appeals. Finding no error, we affirm.

To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the evidence and all reasonable inferences and conclusions drawn therefrom, viewed in the nonmovant's favor, warrant judgment as a matter of law.[2] We review the grant of a motion for summary judgment de novo.[3]

Viewed in Selvy's favor, the evidence showed that on September 13, 2003, Selvy, her two minor children, and several guests were inside the house Selvy shared with her fiancé. A team of law enforcement officers had been assembled to execute an arrest warrant for Selvy's fiancé, who the officers believed might be armed and dangerous. These officers, including Morrison, Poarch and Marquez, burst into the house to execute the warrant. Selvy's fiancé did not resist arrest. After handcuffing the fiancé, the officers ordered two of the guests to empty their pockets and arrested one of them for possessing marijuana. At this point, Selvy demanded that the officers leave her house, asserting they had accomplished the execution of the warrant. Marquez escorted Selvy's fiancé and the other arrested person out of the house. Other officers remained and began to search the living room. Selvy objected, using an expletive, and again told the officers to leave her house. The remaining officers except Morrison left the house. While standing in the doorway blocking the door with his foot, Morrison told Selvy, "[W]e have arrested another one of your boyfriends." Selvy told Morrison in a "conversational voice" to get out of her house, again using an expletive. Several neighbors, including children, had gathered in the road in front of Selvy's house and were watching the interaction between Selvy and the officers. Morrison moved his foot and went out of the house, and Selvy shut and locked the door.

Morrison then yelled, "Fuck this shit, arrest that bitch too!" An officer banged on the front door and yelled for Selvy to open the door

---

[1] Morrison was employed by the Gordon County Sheriff's Department; Poarch and Marquez were employed by the City of Calhoun Police Department.

[2] *Latson v. Boaz*, 278 Ga. 113 (598 SE2d 485) (2004).

[3] *Osman v. Olde Plantation Apts. &c.*, 270 Ga. App. 627 (607 SE2d 236) (2004).

or he would kick it in. When Selvy opened the door, Marquez grabbed and then twisted her arm behind her back and slammed her face into the wall. Selvy's ten-year-old son ran to her and was "hugging [her] ankle, screaming . . . , 'Don't hurt my momma. . . .'" Poarch "rushed in" and kicked Selvy's legs out from under her. In the process, his foot "glanced off the bottom [of her] right leg," striking her son in the mouth and causing him to bleed. Poarch then said to Selvy, "look what you did to your kid, you stupid bitch."

Selvy was handcuffed and taken out to a police car. She did not resist arrest or curse at the officers. She was not told why she was being arrested. At the police station, Poarch and Marquez denied being the officer who arrested Selvy and told another officer there to "fill it out however you want." Poarch and Marquez walked away laughing. Selvy was released on bond.

Selvy states that she was "belatedly charged with the City Ordinance of Disorderly Conduct, under Section 62.5 of the Code of Calhoun, Georgia. . . ." The record does not include a copy of the criminal charging document brought against Selvy, nor does the record indicate the ultimate resolution of a charge against her. Morrison testified that he called for Selvy's arrest for disorderly conduct due to her "loud and continued use of offensive, indecent, and abusive language" that "caus[ed] a scene that was heard throughout the neighborhood and [by] people from the neighborhood gathered to watch the incident."

Selvy argues that the trial court erred in finding that the officers were entitled to official immunity in connection with her arrest. "The doctrine of official immunity . . . offers public officers and employees limited protection from suit in their personal capacit[ies]."[4] Its purpose is to "preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight."[5] Under the Georgia Constitution,

all officers and employees of the state or its departments or agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.[6]

---

[4] *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001) (footnote omitted).
[5] Id. (footnote omitted).
[6] Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d).

In *Gilbert v. Richardson*,[7] the Supreme Court of Georgia applied these principles to actions brought against county officials.[8] And since that decision, the Court has "applied the same standard of liability for the discretionary acts of city employees as for the acts of county employees."[9]

Selvy contends that the officers were not entitled to official immunity for their actions in arresting her. The making of a warrantless arrest for conduct occurring in an officer's presence is a discretionary act that will not give rise to personal liability unless the officer acted with actual malice or actual intent to cause injury.[10] Selvy argues that a jury could find that the officers acted with actual malice or actual intent to cause injury because her arrest was groundless, it followed unauthorized searches of her house and guests, and the officers were so "vicious" and "brutal" in carrying out her arrest that their "assault" was indicative of malice and intent to injure. Selvy also points to Morrison's use of profanity toward her when calling for her arrest, the inability or refusal of Poarch and Marquez to state who arrested her or specify a reason for her arrest, and the general attitude displayed at the police station by Poarch and Marquez concerning the arrest.

"[I]n the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact."[11] Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others.[12] "A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs."[13] Likewise,

---

[7] 264 Ga. 744 (452 SE2d 476) (1994).

[8] Id. at 752-753 (6).

[9] *Cameron*, supra at 125 (2) (footnote omitted); see also *Kidd v. Coates*, 271 Ga. 33, 33-34 (518 SE2d 124) (1999).

[10] See *Delong v. Domenici*, 271 Ga. App. 757, 758-759 (1) (610 SE2d 695) (2005). A discretionary act, in contrast to a ministerial act, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. *Todd v. Kelly*, 244 Ga. App. 404, 406 (1) (535 SE2d 540) (2000).

[11] *Adams v. Hazelwood*, 271 Ga. 414, 414-415 (2) (520 SE2d 896) (1999) (citations, punctuation and footnote omitted). See generally *Merrow v. Hawkins*, 266 Ga. 390, 392 (2) (467 SE2d 336) (1996) (discussing inclusion of "actual malice" requirement in 1991 amendment to Georgia Constitution).

[12] *Murphy v. Bajjani*, 282 Ga. 197, 203 (4) (647 SE2d 54) (2007); see also *Phillips v. Hanse*, 281 Ga. 133, 135 (2) (637 SE2d 11) (2006) (discussing "express malice" and "implied malice").

[13] *Murphy*, supra (punctuation omitted).

[t]he phrase "actual intent to cause injury" has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive.[14]

The evidence in this case may have shown poor judgment, rude behavior, and reckless disregard for the rights and safety of others on the part of the officers, but for the reasons explained below, we do not find that this evidence created a jury question concerning whether the officers had actual malice toward or an actual intent to injure Selvy. Likewise, for the reasons explained below, we do not find that this evidence created a jury question concerning whether the officers had actual malice toward or an actual intent to injure Selvy's son.

The officers appeared at Selvy's house to execute an arrest warrant on a person whom they believed was armed and dangerous. Once inside the house, the officers saw numerous individuals in the immediate presence of the person they had come to arrest. Selvy does not challenge the validity of the underlying warrant for her fiancé or his arrest, and the law recognizes instances in which arresting officers may search an arrestee and his or her immediate presence in connection with effecting an arrest.[15] Under these circumstances we find no evidence of actual malice.

Morrison testified that Selvy's arrest was based upon her disorderly conduct. Pursuant to OCGA § 16-11-39 (a) (4), a person commits disorderly conduct when he or she, "[w]ithout provocation, uses obscene and vulgar or profane language in the presence of . . . a person under the age of 14 years which threatens an immediate breach of the peace."[16] Morrison testified that he called for Selvy's arrest

because of her loud and continued use of offensive, indecent, and abusive language towards the law enforcement officers present, [which] was causing a scene that was heard throughout the neighborhood and [by] people from the neighborhood gathered to watch the incident.

---

[14] *Kidd*, supra (citations and punctuation omitted).

[15] See OCGA § 17-5-1; *United States v. Robinson*, 414 U. S. 218, 224 (I) (94 SC 467, 38 LE2d 427) (1973).

[16] Selvy argues that we should look instead to the City of Calhoun's disorderly conduct ordinance in determining whether the circumstances of her arrest demonstrated actual malice. There is no copy of this ordinance in the record, and we cannot take judicial notice of municipal ordinances. *Oliver v. City of Macon*, 241 Ga. 306 (245 SE2d 280) (1978).

He also testified that the people gathered in front of Selvy's house included children. Even if no probable cause ultimately was found for the disorderly conduct arrest, under these circumstances the mere fact of the arrest did not demonstrate actual malice.[17] Moreover, " '[t]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.' "[18] While it is unfortunate that Selvy's son was kicked during the arrest, the record contains no evidence that any of the officers intended to strike the boy. Selvy herself testified that her son was struck when Poarch's foot "glanced off" her leg as the officer was trying to kick Selvy's feet out from under her.

We find the circumstances of Selvy's arrest similar to those in *Tittle v. Corso*,[19] where an officer's acts of slamming against his vehicle a motorist suspected of a shooting, threatening the motorist, and using profanity in apprehending the motorist did not demonstrate actual malice.[20] "[E]vidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity,"[21] nor is proof of ill will, unless the ill will is "combined with the intent to do something wrongful or illegal."[22] Here, Morrison used profanity, referred to Selvy as a "bitch" and made derogatory references about her "boyfriends." These statements, however, fail to make the requisite showing that the officers deliberately intended to commit a wrongful act.

*Gardner v. Rogers*,[23] cited by Selvy, is distinguishable. The evidence in *Gardner* showed that a police officer completed an interview with a suspect at her house and told her that he was not going to arrest her at that time. But when the suspect tried to shut her front door, the officer pushed his way back into the house, used physical force to take her into custody, and then took her to another location where he discussed with a colleague how to devise a ground

---

[17] See *Reed v. DeKalb County*, 264 Ga. App. 83, 86-87 (589 SE2d 584) (2003) ("Even when an arresting officer operates on a mistaken belief that an arrest is appropriate, official immunity still applies.") (citation omitted); see also *Todd*, supra at 407; *Woodward v. Gray*, 241 Ga. App. 847, 850-852 (b), (c) (527 SE2d 595) (2000); see generally *Means v. City of Atlanta Police Dept.*, 262 Ga. App. 700, 705-706 (2) (586 SE2d 373) (2003) (discussing immunity of law enforcement officer to action brought under 42 USC § 1983 where officer had arguable probable cause to arrest plaintiff).

[18] *Tittle v. Corso*, 256 Ga. App. 859, 863 (1) (569 SE2d 873) (2002), quoting *Graham v. Connor*, 490 U. S. 386, 396 (109 SC 1865, 104 LE2d 443) (1989).

[19] Supra.

[20] Id.

[21] Id. at 862 (1) (citation, punctuation and footnote omitted).

[22] *Adams*, supra at 415; see also *Anderson v. Cobb*, 258 Ga. App. 159, 160-161 (2) (573 SE2d 417) (2002).

[23] 224 Ga. App. 165 (480 SE2d 217) (1996).

on which to arrest her.[24] We held that this evidence created a jury question on whether the officer had actual malice against the plaintiff.[25] Here, in contrast, Morrison testified he called for Selvy's arrest after determining that she had committed the crime of disorderly conduct. Notwithstanding the responses of Poarch and Marquez to an apparent inquiry concerning Selvy's charges at the police station, there is no evidence that these officers fabricated or even schemed to fabricate a charge as did the officers in *Gardner.*

"[O]ur task is not to decide, with the benefit of hindsight, what [the officers] should have done. We are concerned only with whether [their] behavior showed a deliberate intention to commit a wrongful act."[26] Because there was no evidence to support a finding of actual malice, the trial court correctly determined that the officers were entitled to official immunity from the claims of Selvy and her son.

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED JULY 11, 2008.

*William T. Elsey*, for appellants.

*Womack, Gottlieb & Rodham, Ronald R. Womack, Steven M. Rodham, M. Suzanne Hutchinson, Vanice H. Sikes, Jr.*, for appellees.

---

[24] Id. at 166-167.

[25] Id. at 169 (4).

[26] *Tittle*, supra at 862-863.