BARTLE, District Judge:
This action arises out of a confrontation in the Fulton County Courthouse between plaintiff Lisa Y.S. West, an attorney and former city judge, and defendant Terry Davis, a deputy sheriff. West has *1066 sued Davis under 42 U.S.C. § 1983 for subjecting her to an unreasonable seizure and for using excessive force in the course of the seizure in violation of the Fourth Amendment as incorporated into and applicable to the states and local governmental entities through the Fourteenth Amendment.[1] See, e.g., Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The complaint also contains a supplemental state law claim under the Georgia Constitution. The District Court granted summary judgment on both claims in favor of Davis, and West has appealed. Our standard of review is plenary. Harris v. Liberty Cmty. Mgmt., Inc., 702 F.3d 1298, 1301 (11th Cir.2012).
I
When deciding on the propriety of the grant of summary judgment, the court must consider the facts and the justifiable inferences in the light most favorable to the nonmoving party, that is, West. Layton v. DHL Express (USA), Inc., 686 F.3d 1172, 1175 (11th Cir.2012). Summary judgment may be granted only if there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(a); Fils v. City of Aventura, 647 F.3d 1272, 1287 (11th Cir.2011).
According to West, she entered the Fulton County Courthouse on December 9, 2010 at about 12:55 p.m. for a 1:00 p.m. court appearance on the fourth floor. She was not wearing an overcoat. At the security checkpoint in the courthouse, she placed her briefcase and purse on the conveyor belt of the x-ray machine and walked through the metal detector, which was activated. At that point, Davis, as part of the security detail, commanded her to remove her suit jacket. She responded that she would not do so because it would improperly expose her undergarments. Davis continued to insist that she remove her suit jacket and that if she refused to do so, her choices were to allow him to look under her clothes, to leave the courthouse, or to be arrested. When West replied, “You are kidding,” he retorted, “No, I’m not.” He motioned to her chest and stated “I can see you have something on underneath your coat” as he came very close to her. Several times West asked him to call his supervisor, but ignoring her request he reiterated what she needed to do to avoid arrest. He also reached toward his waist belt and behind his back in the vicinity of his handcuffs, all the while glaring at her. After several minutes, he finally contacted his supervisor.
As West waited for the supervisor to appear, she called her husband, an attorney, on her cell phone to apprise him of what was occurring. Significantly, no signs were posted prohibiting cell phone use in that part of the courthouse. West then called her client to say that she was being delayed in arriving at the courtroom. At this point, Davis ordered, “Get off the phone.” While she was holding the phone to her ear, Davis forcibly grabbed her hand, jerking the hand and arm away from her face and toward his body. He squeezed her hand and fingers hard and twisted her wrist back and forth, causing her severe pain. He wrenched the cell phone from her fingers and flung it into her purse.
Shortly thereafter, the supervisor arrived and told West she did not have to remove her suit jacket. Instead, as directed by his supervisor, Davis wanded her without incident—something he could have done at the outset. Following her court appearance, West drove to a hospital emergency room where she received medi *1067 cation and a splint for her wrist. Thereafter, she saw a hand specialist and had a carpal tunnel release procedure on the wrist that Davis had grabbed and twisted.
As a result of the incident, Davis was suspended from his job for a short period and was reassigned to work in the local jail.
II
It is West’s position that the Fourth Amendment governs her claim that she was unreasonably seized and subjected to excessive force during the seizure. The Fourth Amendment provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const, amend. IV. Davis counters that no seizure occurred and that the proper analysis is whether he applied excessive force in violation of substantive due process under the Fourteenth Amendment.
Whether the Fourth Amendment or substantive due process is applicable is of critical importance. The test under the Fourth Amendment is whether Davis’ conduct was objectively reasonable under the circumstances. Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). It is a fact intensive inquiry. The “nature and quality of the intrusion on the individual’s Fourth Amendment interests” must be carefully balanced against “the countervailing governmental interests at stake.” Id. at 396, 109 S.Ct. 1865 (quoting Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Under substantive due process, the question is whether Davis’ use of force shocks the conscience, a more onerous standard of proof than under the Fourth Amendment. Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir.2009).
The District Court rejected West’s argument that she was the subject of a Fourth Amendment seizure. It concluded that the proper analytical framework for determining whether the force was excessive was under substantive due process. After reviewing the record, presumably in the light most favorable to West, the District Court held that the conduct of Davis did not shock the conscience as a matter of law and that he was entitled to qualified immunity. See generally Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). As noted above, the court granted summary judgment in favor of Davis.
The Supreme Court in Graham v. Con-nor explained that when a specific provision of the Constitution is allegedly infringed, a court must decide the claim in accordance with the terms of that provision rather than under the more general rubric of substantive due process. Graham, 490 U.S. at 394, 109 S.Ct. 1865. Thus, we must first determine, based on the record before us and in the light most favorable to West, whether Davis subjected her to a Fourth Amendment seizure.
The meaning of what constitutes a seizure under the Fourth Amendment was well established at the time of the encounter at issue through a long line of Supreme Court precedents. We begin with Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in which a police officer observed several men repeatedly casing a store window. Based on his years of law enforcement experience, the officer patted down the individuals and located a gun on defendant Terry. The Supreme Court *1068 ruled that a “stop” and “frisk” is within the purview of a Fourth Amendment seizure:
It is quite plain that the Fourth Amendment governs “seizures” of the person which do not eventuate in a trip to the station house and prosecution for crime—“arrests” in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has “seized” that person.
Id. at 16, 88 S.Ct. 1868.
In Tennessee v. Garner, a case under 42 U.S.C. § 1988 in which the police used deadly force to prevent an escape, the Supreme Court agreed that a Fourth Amendment seizure had taken place. 471 U.S. at 7, 9, 105 S.Ct. 1694. As the Court reiterated, “[wjhenever an officer restrains the freedom of a person to walk away, he has seized that person.” Id. at 7, 105 S.Ct. 1694.
Several years later, the Supreme Court decided Brower v. County of Inyo, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). There, a fugitive was killed when he crashed into a police roadblock while fleeing the police in a stolen vehicle. Id. at 594, 109 S.Ct. 1378. The heirs of the fugitive sued the police under 42 U.S.C. § 1983 for violation of the Fourth Amendment. Id. The Supreme Court reversed the Court of Appeals, which had upheld the trial court’s dismissal of the complaint. Id. at 599-600, 109 S.Ct. 1378. Taking the allegations of the complaint as true, the Court held that a seizure had occurred. Id. The Court distinguished the situation at hand from that of a fugitive fleeing who crashes into an obstacle not deliberately set up by the police to stop him. Id. at 595-96, 109 S.Ct. 1378. The Court explained:
It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmen-tally caused termination of an individual’s freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual’s freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied. That is the reason there was no seizure in the hypothetical situation that concerned the Court of Appeals. The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash. If, instead of that, the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect’s freedom of movement would have been a seizure.
Id. at 596-97, 109 S.Ct. 1378.
The Supreme Court also faced the question whether a seizure had occurred in Graham v. Connor, an action under 42 U.S.C. § 1983 involving an allegation of excessive force in making an investigatory stop. 490 U.S. at 388, 109 S.Ct. 1865. At the trial the District Court granted a directed verdict in favor of the defendant, and the Court of Appeals affirmed. Id. The Supreme Court reversed. Id. at 392, 109 S.Ct. 1865. It concluded that the lower courts had erred in failing to apply the objective reasonableness test under the Fourth Amendment:
[W]e ... hold that all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory *1069 stop, or other “seizure” of a free citizen should be analyzed under the Fourth Amendment and its “reasonableness” standard, rather than under a “substantive due process” approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of “substantive due process,” must be the guide for analyzing these claims.
Id. at 395, 109 S.Ct. 1865. The Court in Graham, quoted Terry v. Ohio: “A ‘seizure’ triggering the Fourth Amendment’s protections occurs only when government actors have, ‘by means of physical force or show of authority, ... in some way restrained the liberty of a citizen.’ ” Id. at 395 n. 10, 109 S.Ct. 1865 (quoting Terry, 392 U.S. at 19 n. 16, 88 S.Ct. 1868).
Finally, in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the police were chasing a number of youths who fled when the police approached. An officer ultimately caught up with one of the youths and tackled him. Id. at 623, 111 S.Ct. 1547. Just before that moment the youth tossed away what appeared to be a small rock which turned out to be crack cocaine. Id. The Supreme Court affirmed the denial of a motion to suppress this evidence because the cocaine was abandoned before the seizure took place. Id. at 629, 111 S.Ct. 1547. The Court found that the seizure occurred when the youth was tackled as “[t]he word ‘seizure’ readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful.” Id. at 626, 111 S.Ct. 1547. For a seizure to occur a person must not be “free to disregard the police and go about his [or her] business.” Id. at 628, 111 S.Ct. 1547.
Davis relies on United States v. Drayton, 536 U.S. 194, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002). That decision is inap-posite. There, a police officer, accompanied by two other officers, engaged in random questioning of passengers on a Greyhound bus at a scheduled stop and requested consent to search their persons and luggage. Id. at 197, 122 S.Ct. 2105. Christopher Drayton, a passenger, consented and the officer found cocaine on his person. Id. at 198-99, 122 S.Ct. 2105. Drayton was indicted and moved to suppress evidence on the ground that he had been seized on the bus and that the consent to search was not voluntary. Id. at 199-200, 122 S.Ct. 2105. The Supreme Court ruled that on the record before it a reasonable person would “feel free to decline the officers’ requests or otherwise terminate the encounter” and thus no seizure occurred. Id. at 202, 203-04, 122 S.Ct. 2105 (quoting Florida v. Bostick, 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). While the officers were armed, the officers did not remove their weapons from their holsters. Id. at 204, 122 S.Ct. 2105. The Court observed that there had been “no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice.” Id. What happened in that case is a far cry from what West says happened to her in the Fulton County Courthouse.
The restraint on one’s freedom of movement does not have to endure for any minimum time period before it becomes a seizure for Fourth Amendment purposes. In Terry v. Ohio, the Supreme Court recognized “[e]ven a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening and perhaps *1070 humiliating experience.” 392 U.S. at 24-25, 88 S.Ct. 1868. In United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), the Supreme Court opined, “[t]he Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest.” In Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the Court stated, “[t]he Fourth and Fourteenth Amendments are implicated in this case because stopping an automobile and detaining its occupants constitute a ‘seizure’ within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief.” And, of course, a seizure can be accomplished in an instant, for example and most starkly as a result of deadly force from a police bullet. See Garner, 471 U.S. at 9, 105 S.Ct. 1694.
Applying the Supreme Court’s precedents defining seizure to the facts in the record construed in the light most favorable to West, it is clear that West was seized. Davis, a deputy sheriff, intentionally restrained her liberty of movement by physical force when he grabbed her hand, squeezed it, jerked and pulled her arm toward him, and wrenched her wrist back and forth. While Davis was applying physical force, albeit for only a brief time, West was surely not free to walk away or end the encounter and proceed about her business to the courtroom of the Fulton County Courthouse where she was to meet her client. If a short stop and frisk is a seizure, what happened here was surely a seizure as well.
As noted at the outset, West’s Fourth Amendment claim has both an unreasonable seizure component and an excessive force component. In order for there to be a violation of the Fourth Amendment because of the use of excessive force, it must have been applied during the course of the seizure and not at some other time. See Graham, 490 U.S. at 394, 109 S.Ct. 1865; Thornton v. Macon, 132 F.3d 1395, 1400 (11th Cir.1998). As the Supreme Court noted in California v. Hodari D., “a seizure is a single act, and not a continuous fact.” 499 U.S. at 625, 111 S.Ct. 1547 (quoting Thompson v. Whitman, 85 U.S. (18 Wall.) 457, 471, 21 L.Ed. 897 (1874)). The record at this stage demonstrates without question that any excessive force used by Davis against West took place during the course of the seizure.
Accordingly, the District Court erred in applying to West’s claim under 42 U.S.C. § 1983 the substantive due process/shock the conscience test rather than the well-established objective reasonableness standard under the Fourth Amendment. The District Court’s grant of summary judgment on this claim in favor of Davis and against West is reversed.
Ill
Our dissenting colleague states that “there is no seizure without reasonably perceived detention or an unambiguously manifest intent to physically restrain the object of the officer’s force.” The dissent concludes that West was not seized because a reasonable person in her circumstances would not believe that she was detained and that Davis did not intend to restrain West but rather only meant to reach for her cell phone and terminate her call. We do not agree.
First, in reaching the conclusion that West was not restrained, the dissent considers everything that happened before Davis grabbed West’s hand. Certainly, West was not seized while she was disputing Davis’ request for her to remove her suit jacket. What happened before Davis grabbed West’s hand, however, is irrele *1071 vant to the question of whether Davis seized West at the moment that he physically grabbed her hand. At that moment, if West is to be believed, she was seized. Davis “terminat[ed] [West’s] freedom of movement through means intentionally applied[,]” and that constituted a Fourth Amendment seizure. As the Supreme Court reiterated in Scott v. Harris, “a Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied.” 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting Brower, 489 U.S. at 596-97, 109 S.Ct. 1378). In fact, the dissent concedes it is arguable that “for the brief moment when Davis took control over [West’s] hand, he ‘restrained] West’s freedom to walk away.’ ”
We are similarly not persuaded by the dissent’s insistence that no seizure of West took place because Davis only meant to grab her cell phone to terminate her call and did not intend to grab her hand. As the Supreme Court has made clear, “a seizure occurs whenever [an officer] [is] responsible for the termination of a person’s movement, regardless of the reason for the termination.” Id. at 384 n. 10, 127 S.Ct. 1769 (citation and internal quotation marks omitted). Whether Davis intended only to grab West’s cell phone is irrelevant where his intentional act resulted in the termination of West’s movement. See id. In Brower, for example, the Supreme Court stated, “if ... the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect’s freedom of movement would have been a seizure.” 489 U.S. at 597, 109 S.Ct. 1378. To the extent that Davis’ mental state matters, a reasonable jury could certainly find that the grabbing of West’s hand was intentional.
The dissent further cites County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), for the proposition that no seizure occurred here. We disagree. There, a police officer had engaged in a high-speed chase of a teenager driving a motorcycle who had refused to stop at the officer’s command. Ultimately, the motorcycle tipped over. The police car in pursuit could not stop in time and skidded into the passenger on the motorcycle who was killed. The representative of the decedent’s estate filed an action under 42 U.S.C. § 1983 to recover for damages.
The Supreme Court held that the conduct of the police officer must be decided under substantive due process of the Fourteenth Amendment rather than under the Fourth Amendment. The death of the passenger was clearly accidental and thus no seizure had occurred. Citing Brower, the Court stated:
[A] Fourth Amendment seizure does not occur whenever there is a govern-mentally caused termination of an individual’s freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual’s freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied. We illustrated the point by saying that no Fourth Amendment seizure would take place where a pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit, but accidentally stopped the suspect by crashing into him.
Lewis, 523 U.S. at 844, 118 S.Ct. 1708 (quoting Brower, 489 U.S. at 596-97, 109 S.Ct. 1378) (internal quotation marks omitted).
*1072 Unlike Lewis, and accepting the evidence in a way most favorable to West, there was nothing accidental about what happened in the Fulton County Courthouse on December 9, 2010. As we explained above, a jury could reasonably find that Davis intentionally grabbed West and at least for a brief time restricted her freedom of movement.
The dissent, in addition, cites Brendlin v. California, 551 U.S. 249, 256, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). There the Supreme Court reiterated that when a police officer makes a traffic stop, the driver of the car is seized under the Fourth Amendment. Id. at 255, 127 S.Ct. 2400. It then proceeded to hold that the passenger of the car was also seized. Id. at 254-56, 127 S.Ct. 2400. In its opinion, it explained that a seizure occurred even though the stop was for a limited purpose and “the resulting detention [was] quite brief.” Id. at 255, 127 S.Ct. 2400 (quoting Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). The Court again stated that the touchstone of a seizure is the restraint on a person’s freedom of movement “through means intentionally applied.” Id. at 254, 127 S.Ct. 2400 (quoting Brower, 489 U.S. at 597, 109 S.Ct. 1378). Again, as in Brendlin, there is evidence that that is exactly what occurred here.
Finally, we have no reason to address the dissent’s view that Davis is entitled to qualified immunity. That question is best resolved on remand. In doing so, the District Court must focus on the constitutional right guaranteed by the Fourth Amendment.
IV
West has also alleged in her complaint that the conduct of Davis amounted to an unconstitutional abuse of a citizen by a law enforcement officer in violation of Article I, § I, ¶ XVII of the Georgia Constitution which provides in relevant part: “nor shall any person be abused in being arrested, while under arrest, or in prison.” Specifically, West has asserted that Davis committed a battery on her and was negligent in violation of his duty of care as a reasonable law enforcement officer. Davis filed a motion for summary judgment on the ground of official immunity under Article I, § II, ¶ IX(d) of the state constitution. That provision reads:
Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this sub-paragraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.
The District Court granted summary judgment in favor of Davis based on state official immunity. The court reasoned that Davis’ conduct was discretionary and that it did not rise to the level of actual malice or actual intent to cause injury, the threshold necessary to overcome official immunity-
We note that West has conceded the negligence portion of her claim. The failure to perform ministerial functions is not an issue here. The conduct of Davis *1073 insofar as it constitutes a battery was a discretionary, not a ministerial act. Under Article I, § II, ¶ IX(d) of the state constitution, official immunity is waived for discretionary behavior such as allegedly transpired here only when the governmental officer or employee acts “with actual malice or intent to cause injury.” Gilbert v. Richardson, 264 Ga. 744, 452 S.E.2d 476, 483 (1994).
The Georgia courts have defined actual malice as a “deliberate intention to do wrong.” Adams v. Hazelwood, 271 Ga. 414, 520 S.E.2d 896, 898 (1999) (quoting Merrow v. Hawkins, 266 Ga. 390, 467 S.E.2d 336, 337 (1996)); Selvy v. Morrison, 292 Ga.App. 702, 665 S.E.2d 401, 404-05 (2008). It does not include “the reckless disregard for the rights and safety of others.” Murphy v. Bajjani, 282 Ga. 197, 647 S.E.2d 54, 60 (2007). The phrase “actual intent to cause injury” means “an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.” Kidd v. Coates, 271 Ga. 33, 518 S.E.2d 124, 125 (1999) (quoting Frame v. Boatmen’s Bank of Concord Village, 782 S.W.2d 117, 121 (Mo.Ct.App.1989)) (internal quotation marks omitted).
A jury may easily be able to find tor-tious behavior on the part of Davis. Nonetheless, we agree with the District Court that accepting the evidence in the light most favorable to West, it does not rise to the level of actual malice or intent to cause injury. The District Court properly entered summary judgment in favor of Davis on West’s state law claim on the ground of official immunity under the Georgia Constitution.
V
In conclusion, the order of the District Court granting summary judgment in favor of Davis and against West on her claim under 42 U.S.C. § 1983 is reversed and the action in this regard is remanded for further proceedings consistent with this opinion. The order granting summary judgment in favor of Davis and against West on her supplemental state law claim is affirmed.
Reversed in part, affirmed in part, and REMANDED.

. In this opinion, the Court will simply use the shortened term Fourth Amendment.