[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12516

_____

D.C. Docket No. 2:17-cv-00141-RWS

TERRY CANTRELL,

Plaintiff–Appellant,

versus

TREVOR MCCLURE,
individually,
TREVOR MCCLURE,
in his official capacity as an Officer with the
Ellijay Police Department, et al.,

Defendants–Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 5, 2020)

Before ANDERSON and MARCUS, Circuit Judges, and ROTHSTEIN,* District
Judge.

_____

* Honorable Barbara J. Rothstein, United States Senior District Judge for the Western District of
Washington, sitting by designation.

PER CURIAM:

Plaintiff-Appellant Terry Cantrell appeals an order of the district court, granting a motion for judgment on the pleadings and dismissing all federal and state-law claims against defendants, Officer Trevor McClure in his individual and official capacities, Chief of Police Edward D. Lacey in his official capacity, and the City of Ellijay, Georgia.[1]  For the following reasons, we affirm the district court's judgment in its entirety.

## I.    BACKGROUND

The following facts, as alleged by Cantrell, as clearly presented in police dashboard camera footage, or as otherwise undisputed, are taken as true for purposes of the motion to dismiss.[2]  On June 16, 2015, Cantrell was driving a vehicle while intoxicated. Officer Brady Dover initiated a traffic stop. Cantrell did

---

[1] Cantrell has not appealed that portion of the district court's order dismissing his claims against McClure and Lacey in their official capacities.

[2] Appellant has challenged the district court's reliance on the video footage, which was referenced in the complaint, and attached to defendants' answer. The district court's consideration of the undisputedly authentic footage was proper. A court may consider an exhibit attached to a pleading, or a motion to dismiss, without converting the motion into one for summary judgment, where the exhibit is central to the plaintiff's claim, and its authenticity is unchallenged. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Such is the case here. Appellant objects, arguing that video footage is subject to interpretation; but so too are words. This Court is capable of construing all ambiguities in the video footage in favor of plaintiff, just as it must, at this stage, construe in plaintiff's favor all ambiguities in the written pleadings, but we are not required to ignore that footage. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (where video footage clearly contradicted plaintiff's allegations, "[t]he Court of Appeals . . . should have viewed the facts in the light depicted by the videotape").

not stop; instead, he accelerated and a chase ensued. After narrowly avoiding a collision with an oncoming vehicle, Cantrell crashed into a park, abandoned his vehicle, and tried to elude arrest on foot.

A second police car in pursuit of Cantrell approached the park, and Officer McClure, who was riding in the passenger seat, undertook a chase of Cantrell on foot. A video on the dashboard of the second police vehicle recorded the following scene, second-by-second: at 16:00:46 the second police car arrived at the park; at 16:00:48 Cantrell, spotting the officers, turned and began walking away. At 16:00:51, McClure exited the police vehicle and began running towards Cantrell; and at 16:00:53, Cantrell stopped, turned around towards the approaching officers, and began to raise his hands over his head. Less than a second later, McClure, already sprinting towards Cantrell, tackled him to the ground. Fewer than four seconds passed between the moment that McClure exited the police car, and when he tackled Cantrell; only at the last second did Cantrell gesture an apparent surrender.

Upon being tackled, Cantrell hit the ground and his head struck the pavement. Cantrell was subsequently air-lifted to Atlanta Medical Center, where he was diagnosed with intracranial bleeding and a closed head injury, and remained in a coma for 12 days.

3

Defendants moved for dismissal on the pleadings of all of Cantrell's claims. The district court granted the motion, dismissing Cantrell's claims (1) against McClure, under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment, concluding McClure was entitled to qualified immunity; (2) for municipal liability against the City of Ellijay, finding no constitutional violation had occurred; and (3) under Georgia state law, based on, among other things, an official immunity defense.  Appellant filed this timely appeal.

## II.    STANDARD OF REVIEW

"We review *de novo* a district court's entry of judgment on the pleadings, accepting the facts in the complaint as true and viewing them in the light most favorable to the nonmoving party." *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) (citing *Ortega v. Christian*, 85 F.3d 1521, 1524-25 (11th Cir. 1996)). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (quoting *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact,

judgment on the pleadings must be denied." *Perez*, 774 F.3d at 1335 (citing

*Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956)).[3]

## III.    DISCUSSION

### A.    McClure Is Entitled to Qualified Immunity

As we have often observed, "qualified immunity offers complete protection

for government officials sued in their individual capacities as long as their conduct

violates no clearly established statutory or constitutional rights of which a

reasonable person would have known." *McCullough v. Antolini*, 559 F.3d 1201,

1205 (11th Cir. 2009) (alteration adopted) (quoting *Lee v. Ferraro*, 284 F.3d 1188,

1193-94 (11th Cir. 2002)). "The purpose of qualified immunity is to allow officials

to carry out discretionary duties without the chilling fear of personal liability or

harrassive litigation, 'protecting from suit all but the plainly incompetent or one

who is knowingly violating the federal law.'" *Id*. (citation omitted) (quoting *Lee*,

284 F.3d at 1194). To survive a motion to dismiss, a plaintiff "must satisfy the

two-pronged qualified-immunity standard: (1) the facts alleged in his complaint

constitute a violation of his constitutional rights, and (2) the constitutional rights

were 'clearly established' when the defendant committed the act complained of."

*Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014) (citing

---

[3] Opinions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Based upon the uncontroverted video evidence, and taking Cantrell's allegations as true, we conclude that McClure is entitled to qualified immunity, as Cantrell has failed to meet his burden on either count.

As to the first prong of the test, Cantrell has failed to establish that a constitutional violation took place. The force McClure used in the course of Cantrell's arrest was objectively reasonable. "In determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough*, 559 F.3d at 1206. "In deciding whether a police officer used excessive force, we pay 'careful attention to the facts and circumstances' of the case, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts should also be "mindful that officers make split-second decisions in tough and tense situations." *Id.*

Here, McClure was aware that Cantrell was both non-compliant, and a serious risk to public safety. In the moments leading up to the instant before the

6

tackle, Cantrell had evaded a traffic stop; had forced Officer Dover into a dangerous car chase; had narrowly missed colliding with an oncoming vehicle; had crashed his vehicle into a park; had evaded arrest by the first officer he encountered; and had indicated an intent to evade the second set of officers attempting to detain him. Furthermore, McClure had literally a split second to change both his mind, and the momentum of his body in midair, to avoid tackling Cantrell after Cantrell's apparent last-second surrender. Given the circumstances, the force McClure used to arrest Cantrell was not excessive.

This conclusion is not, as Appellant contends, premature or better left to a jury. Courts are to "ascertain the validity of a qualified immunity defense as early in the lawsuit as possible," because qualified immunity "is a defense not only from liability, but also from suit." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013). An evaluation of the reasonableness of the force used is appropriate at this stage because "the question of whether the force used by the officer in the course of an arrest is excessive is a pure question of law, decided by the court." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017) (quotations omitted). The district court had before it all the information necessary for a judgment on the pleadings.

Equally unavailing is Appellant's argument that McClure may have been subjectively unaware of the events preceding his encounter with Appellant. It is

7

well established that we impute "the collective knowledge of the investigating officers . . . to each participating officer." *Terrell v. Smith*, 668 F.3d 1244, 1252 (11th Cir. 2012)(citing *United States v. Hensley*, 469 U.S. 221, 232 (1985)). Furthermore, we must "judge use of force solely on an objective basis, and we do not consider an officer's subjective belief." *Brown v. City of Huntsville*, 608 F.3d 724, 738 (11th Cir. 2010). Objectively and indisputably, Cantrell—who posed a danger to others and was demonstrably non-compliant—was walking away from McClure at the moment McClure began to chase him. Using the proper standard applied to these facts, the district court correctly concluded that McClure did not use excessive force.

Turning to the second independently adequate grounds for granting qualified immunity, a right may be clearly established "either by similar prior precedent, or in rare cases of 'obvious clarity.'" *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015)(quoting *Gilmore*, 738 F.3d at 277). "Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Id.* (quoting *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc)).

We conclude that even if it could be argued that McClure violated a constitutional right (which, as noted above, he did not), qualified immunity is appropriate because under the circumstances of this case, the right invoked was not

8

"clearly established" at the time of the events in question. The two cases Appellant cites as "clearly establishing" the claimed right do not support him. The first, *Mercado v. City of Orlando*, was decided on a materially distinguishable set of facts that, if anything, highlights our point. 407 F.3d 1152, 1157-58 (11th Cir. 2005) (finding excessive force was used where suspect had not committed any crime, posed no danger to anyone but himself, and had not resisted arrest or attempted to evade the officers). The second case, *Brown v. Newton County Sheriff's Office*, was decided after the events took place in this case. 273 F. Supp. 3d 1142 (N.D. Ga. 2017). To successfully challenge the protections of qualified immunity, a plaintiff must demonstrate a right was "clearly established" at the time the alleged violation took place, not established thereafter. *See Ensley v. Soper*, 142 F.3d 1402, 1406 (11th Cir. 1998) (explaining that any "case law that a plaintiff relies upon to show that a government official has violated a clearly established right must pre-date the officer's alleged improper conduct"). Moreover, in deciding whether a right is clearly established, we look to "holdings of cases drawn from the United States Supreme Court, this Court, or the highest court of the state where the events took place." *Gilmore*, 738 F.3d at 277. Nor, in light of the uncontroverted facts outlined above, can it reasonably be said that McClure's conduct was "so egregious that no prior case law is needed to put a reasonable officer on notice of its unconstitutionality." *Id.* at 279.

9

In sum, Cantrell has failed to meet his burden of demonstrating that McClure committed a constitutional violation. The district court's granting of qualified immunity is affirmed.

### B.    Dismissal of Claims Against City of Ellijay Was Proper

Cantrell appeals the district court's dismissal of his claims against the City of Ellijay, brought pursuant to the doctrine set forth in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). *Monell* authorizes lawsuits directly against municipalities where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690. Because McClure's use of force did not constitute a violation of a clearly established constitutional right, however, the district court correctly concluded that the City was entitled to dismissal. *See Knight ex rel. Kerr v. Miami-Dade County,* 856 F.3d 795, 821 (11th Cir. 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) ("There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation.").

### C.    McClure Is Entitled to Official Immunity From State-Law Claims

Finally, the district court also dismissed Cantrell's state-law claims against McClure for failure to render aid, battery, and negligence, concluding that

McClure was entitled to official immunity under state law.[4]  Under Georgia's official immunity doctrine, an officer may be held personally liable only for the negligent performance of ministerial functions or for discretionary acts performed with actual malice. *Carter v. Glenn*, 548 S.E.2d 110, 112 (Ga. Ct. App. 2001).

Cantrell does not claim that deciding the amount of force to use in apprehending a suspect is a ministerial act. The question, therefore, is whether McClure acted with actual malice. *See Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999). "The Supreme Court of Georgia has explained that 'actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact.'" *Bashir v. Rockdale County*, 445 F.3d 1323, 1333 (11th Cir. 2006) (quoting *Adams*, 520 S.E.2d at 898). Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others. *See Murphy v. Bajjani*, 647 S.E.2d 54, 60 (Ga. 2007). Instead, actual malice requires the deliberate intent to cause the harm suffered by the plaintiff. *See Selvy v. Morrison*, 665 S.E.2d 401, 405 (Ga. Ct. App. 2008). In this case, Cantrell has failed to allege facts from which it may be reasonably inferred that McClure acted with actual malice. Dismissal of the state-law claims against McClure was proper.

---

[4] The district court set aside Cantrell's two other state-law claims as well: for *respondeat superior* and agency. Cantrell has not challenged the dismissal of those counts, and has therefore waived any argument that the district court erred in granting judgment to the defendants on those claims. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

11

**AFFIRMED**.