**FIRST DIVISION**
**GOBEIL, J.,**
**PIPKIN and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 25, 2020**

# In the Court of Appeals of Georgia

A20A0844. WILSON v. CROMER et al.

COLVIN, Judge.

This appeal arises from a suit brought by Joshua Wilson against officers of the Albany Police Department. On appeal, Wilson argues that the trial court erred by dismissing his claims under 42 USC §1983 and by granting summary judgment to Appellees on the basis of official immunity. We disagree and therefore affirm.

"To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the evidence and all reasonable inferences and conclusions drawn therefrom, viewed in the nonmovant's favor, warrant judgment as a matter of law." (Footnote omitted.) *Selvy v. Morrison*, 292 Ga. App. 702, 702 (665 SE2d 401) (2008). We review both the grant of a motion for

summary judgment and the dismissal of a plaintiff's complaint de novo. See id.;
*Baker v. GOSI Enterprises*, 351 Ga. App. 484, 484 (830 SE2d 765) (2019).

Viewed in Wilson's favor, the record shows that an attempted robbery occurred at approximately 2:00 a.m. at a Krispy Kreme in Albany, Georgia on February 14, 2013. The victim alerted a 911 operator of the attempted robbery, informing the operator that, without his glasses on, he saw a "slim-built guy, probably about five-nine, maybe five-ten" wearing a blue or violet hoodie. The victim also informed the 911 operator that the perpetrator had a silver handgun. Officers Roy Cromer, Gregory Gadt, Demetrius Kendrick, and Maria Perez of the Albany Police Department responded to the scene of the crime. Upon arrival, the officers reviewed the surveillance footage, from which they could ascertain that the perpetrator was an African-American male wearing a blue hoodie.

At approximately the same time, Wilson, an 18-year-old high school senior, was walking home from his part-time job at Wendy's after stopping at a friend's home to change his clothes. Wearing a gray hoodie, a Wendy's hat, and dark pants, Wilson walked by the Krispy Kreme approximately twenty minutes after the attempted robbery. The victim saw Wilson "jog briskly" across the street in front of the Krispy Kreme and alerted the officers of his presence.

An officer stopped Wilson, asked for identification, asked where Wilson was going, and searched Wilson's backpack. After finding no weapon on Wilson or in his backpack, the officer handcuffed him and transported him in a patrol car to the Krispy Kreme parking lot. The officers then removed Wilson from the patrol car and asked whether the victim could identify him. The victim removed his glasses to replicate the circumstances under which he witnessed the crime and indicated to the officers that Wilson was the perpetrator based upon his recollection of the perpetrator's clothing, height, and weight. The victim clarified in his recorded statement to the Albany Police Department that he never saw the perpetrator's face.

Relying on the victim's identification of Wilson as the perpetrator, an officer transported Wilson to the police station. There, Detective Schemika Foster obtained a Miranda waiver from Wilson and interrogated him. During the interrogation, Wilson explained his presence near the Krispy Kreme and that he had no knowledge of the attempted robbery. Detective Foster verified with Wilson's mother that he left his job at Wendy's around 12:35 a.m. and that it typically took Wilson two hours to walk home. Detective Foster also verified that Wilson left his friend's home around 1:10 a.m. Although Wilson made no inculpatory statement and his whereabouts leading up to the time he was found near Krispy Kreme were verified, Detective

3

Foster sent him to be booked at the Dougherty County Jail and swore out an arrest warrant against Wilson for aggravated assault.

No bond was initially set for Wilson. He spent five months in jail, missing the remainder of his senior year of high school, until bond was set in July 2013. A grand jury indicted Wilson on August 1, 2013, after hearing from Detective Foster as the sole witness. On October 25, 2013, the judge presiding over the criminal case granted Wilson's motion to suppress the victim's show-up identification because the procedure was impermissibly suggestive and because the victim had "no independent basis or ability to identify Mr. Wilson as the perpetrator[.]" Upon the State's motion to nolle prosequi on the same day, the presiding judge entered an order dismissing the criminal action.

On February 11, 2015, Wilson filed his original complaint for false arrest, false imprisonment, and malicious prosecution. After voluntarily dismissing the original complaint on October 21, 2016, Wilson filed a renewal complaint on November 16, 2016, asserting the same state law causes of action against Appellees. On January 10, 2019, Wilson amended his renewal complaint, adding claims under § 1983 for violation of the Fourth and Fourteenth Amendments of the United States Constitution. Subsequently, the trial court granted summary judgment in favor of

4

Appellees on the state law causes of action on the basis of official immunity and dismissed the claims under § 1983 as barred by the applicable statute of limitation.

1. Wilson argues that the trial court erred by granting summary judgment to Appellees on the grounds of official immunity because actual malice could be inferred from the lack of probable cause to arrest Wilson. We disagree.

"The doctrine of official immunity . . . offers public officers and employees limited protection from suit in their personal capacit[ies]." (Footnote omitted.) *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001). Under the Georgia Constitution,

> all officers and employees of the state or its departments or agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and *may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury* in the performance of their official functions.

(Emphasis supplied.) Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d). Because the decision to make a warrantless arrest is a "discretionary act within the scope of the officer's official functions," Appellees are insulated from suit unless there is evidence

that they acted with actual malice. See *Mercado v. Swoope*, 340 Ga. App. 647, 650 (798 SE2d 291) (2017).

> In the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact. Actual malice does not include implied malice or the reckless disregard for the rights and safety of others. A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiff[].

(Footnotes and punctuation omitted.) *Selvy*, supra, 292 Ga. App. at 704. "Evidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity, nor is proof of ill will, unless the ill will is combined with the intent to do something wrongful or illegal." (Footnote and punctuation omitted.) Id. at 706.

This Court has found that summary judgment on the ground of official immunity is inappropriate where a jury could reasonably infer that officers knew that the person they arrested "had not committed the crimes for which they accused [him], thereby deliberately intending to do a wrongful act." *Bateast v. DeKalb County*, 258 Ga. App. 131, 132 (572 SE2d 756) (2002). See also *City of Atlanta v. Shavers*, 326 Ga. App. 95, 98-99 (2) (b) (756 SE2d 204) (overruled on other grounds by *Rivera v.*

6

*Washington*, 298 Ga. 770, 778, n. 7 (784 SE2d 775) (2016)). In other cases, "we have concluded that where an officer's decision to seek warrants might be characterized as misguided there was nevertheless no evidence that the actions were taken with actual malice for purposes of official immunity." (Footnote and punctuation omitted.) *Marshall v. Browning*, 310 Ga. App. 64, 68-69 (712 SE2d 71) (2011). Thus, "no liability attaches to the officer's exercise of his lawful discretion even when the decision to effectuate the arrest is flawed." *Reed v. DeKalb County*, 264 Ga. App. 83, 86 (589 SE2d 584) (2003).

Unlike other areas of law that impose standards of varying levels of scrutiny (i.e. Fourteenth Amendment Equal Protection Clause jurisprudence) the actual malice standard for official immunity applies equally to all public employees, regardless of the power they wield and regardless of the type of harm done. See, e.g. *Barnett v. Caldwell*, 302 Ga. 845, 847-848 (II) (809 SE2d 813) (2018) (teacher); *Odum v. Harn*, 350 Ga. App. 572, 574-575 (829 SE2d 818) (2019) (bus driver); *Selvy*, supra, 292 Ga. App. at 705-706 (law enforcement officer).

The facts of this case fall in between those cases where we have found that a jury may infer actual malice from the circumstances of an arrest and those that we characterized as misguided discretionary decisions. Here, Detective Foster made the

7

decision to jail Wilson and swear a warrant for his arrest despite the fact that the only supporting evidence was that Wilson's clothing matched the description and that the victim identified Wilson as the perpetrator – even though the victim also told Detective Foster that he never saw the perpetrator's face.[1] Still, Wilson has not pointed to any legal authority to support his claim that the jury could reasonably infer actual malice when an officer had scant evidence to support the arrest.

Here, there is no evidence that the officers acted deliberately upon any ill will or personal animus toward Wilson. The actions of the officers were misguided, at least, and showed reckless disregard for Wilson's rights, at most. Notwithstanding, the actions of the officers do not reach the high standard of actual malice. "[T]he judgment that Georgia's Constitution makes is that official immunity will protect those who make bad decisions in order to also protect those who make good ones, and to ensure that public officials can carry out their day-to-day service to the people of this State without fear of litigation." (Citation omitted.) *Barnett*, 302 Ga. at 850 (II). As we are duty-bound to uphold the Georgia Constitution as written, we find that the trial court did not err in granting summary judgment on the basis that the officers

---

[1] We note, however, that the record is clear that there were discrepancies in the victim's description of color of the hoodie worn by the perpetrator (blue or violet) and the color of the hoodie Wilson wore at the time of the arrest (gray).

were entitled to official immunity. See *Selvy*, 292 Ga. App. at 707 (affirming the grant of summary judgment where officers were entitled to official immunity).

2. Wilson argues that the trial court erred in dismissing his claims under 42 USC § 1983 based upon the expiration of the statute of limitation. We disagree.

The statute of limitation for a claim under 42 USC § 1983 is two years. OCGA § 9-3-33; *Day v. Brown*, 207 Ga. App. 134, 134 (1) (427 SE2d 104) (1993). Claims pursuant to § 1983 accrue at detention for false arrest, upon being held for false imprisonment, and at the termination of prosecution in the claimant's favor for malicious prosecution.[2] *Wallace v. Kato*, 549 U.S. 384, 391 (II) (III) (127 SCt 1091, 166 LEd2d 973) (2007); *Whiting v. Traylor*, 85 F.3d 581, 585-586 (II) (11th Cir. 1996) (abrogated on other grounds by *Williams v. Aguirre*, ___ F.3d ___ (2020 WL 3957991) (11th Cir. 2020)). Here, Wilson's § 1983 claims accrued on the day he was detained, February 14, 2013; on the day he was jailed, February 15, 2013; and on the day the indictment was dismissed, October 25, 2013. Thus, the statute of limitations for Wilson's § 1983 claims expired on February 14, 2015, February 15, 2015, and

---

[2] "[T]he accrual date of a § 1983 cause of action is a question of federal law[.]" *Wallace*, 549 U.S. at 388 (II).

October 25, 2015. The record shows that Wilson first asserted his § 1983 claims on January 10, 2019, well after the statute of limitation expired.

Still, Wilson argues that the statute of limitations for his § 1983 claims was suspended based upon his filing of the renewal action within the six-month period required by OCGA § 9-2-61.

> To suspend the running of the statute of limitation in a renewal action, the cause of action must be substantially the same as in the original action. A defendant's liability cannot be enlarged beyond that indicated by the pleadings in the first case. We have held that a plaintiff may not utilize the amendment provisions under OCGA § 9-11-15 (c) to attempt to add otherwise barred claims to renewal actions, when such claims are not substantially the same as the claims in the original action.

(Citations, footnotes, and punctuation omitted.) *Burns v. Dees*, 252 Ga. App. 598, 607 (1) (d) (557 SE2d 32) (2001).

Wilson contends that his § 1983 claims are substantially the same as the state law claims for false arrest, false imprisonment, and malicious prosecution because they arise from the same facts. Wilson concedes, however, that the elements of a claim under § 1983 differ from those in the state law claims in that the defendants must have acted under color of law. See *Rehberg v. Paulk*, 566 U.S. 356, 366 (II) (C) (132 SCt 1497, 182 LEd2d 593) (2012). A claim under § 1983 is a separate and

distinct cause of action from state law claims of false arrest, false imprisonment, and malicious prosecution. See 42 USC § 1983; OCGA § 51-7-1 (false arrest); OCGA § 51-7-20 (false imprisonment); OCGA 51-7-40 (malicious prosecution); *Williams*, supra, \_\_\_\_ F3d at \_\_\_\_ (III); *Blue v. Lopez*, 901 F3d 1352, 1358 (III) (11th Cir. 2018). Accordingly, the § 1983 claims that Wilson added in his amended complaint are not substantially the same as the state law claims in the original complaint. *Baker*, 351 Ga. App. at 488 (3) (a separate, distinct cause of action arising from the same operative facts as alleged in the original complaint "does not necessitate the conclusion that it is substantially the same"). Because these § 1983 claims were not substantially the same as those asserted in the original action, the statute of limitations for the § 1983 claims was not suspended by the filing of the renewal action. See *Safi-Rafiq v. Balasubramaniam*, 298 Ga. App. 274, 276 (679 SE2d 822) (2009) (statute of limitation barred a separate cause of action asserted in renewal action). Therefore, the trial court did not err in dismissing Wilson's § 1983 claims.

*Judgment affirmed. Gobeil and Pipkin, JJ., concur*.

11