**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

_DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES._

**September 29, 2020**

# In the Court of Appeals of Georgia

A20A1039. PATRICK v. ANDREWS et al.

MERCIER, Judge.

In connection with his arrest for obstruction of an officer, Jason Patrick sued Houston County Sheriff Cullen Talton and Deputy Sheriff G. F. Andrews (collectively, defendants), alleging they were liable under federal law for violating his constitutional rights, and under state law for false arrest, wrongful imprisonment, malicious prosecution and battery. The defendants moved for summary judgment based on, inter alia, qualified and official immunity. Patrick appeals the trial court's judgment granting the defendants' motion. For the reasons that follow, we affirm.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." OCGA § 9-11-56 (c). We construe the facts in favor of the nonmovant on summary judgment. *Gatto v. City of Statesboro*, 353 Ga. App. 178 (834 SE2d 623) (2019). "Our review is de novo." Id.

Viewed with these principles in mind, the record shows that around 9 p.m. on August 8, 2013, Gregory Crosby phoned 911 and requested assistance regarding a dispute he was having with his neighbor about the location of a fencepost. Crosby told the dispatcher to "send someone before we shoot each other" and ended the phone call.

Deputy Andrews was dispatched to the scene, which was a farm in a remote area of the county. When Andrews arrived, he made contact with Crosby and his neighbor, Boyd Headley. Headley had a gun holster on his side; he told Andrews the gun was in his truck. Headley said he did not have any weapons on him, but Andrews found a knife in his pocket. Crosby was near his golf cart, which had gun racks on it. Andrews moved the men away from their vehicles and positioned himself so the men could not access their vehicles and weapons without "going . . . through" him.

Crosby and Headley were "hostile towards [Andrews]" and each other.

Andrews deposed that he was trying to maintain safety, reason with the men and diffuse the situation, but Crosby and Headley kept yelling and would not calm

2

down or cooperate with him. Crosby and Headley appeared to be intoxicated. While Andrews was trying to take charge of the situation, a back-up officer radioed him and said he was having trouble finding the location. Andrews tried to give the officer directions while still "dealing with" Crosby and Headley in what was "a fluid situation." Crosby then stated that he was calling his friend, and he used his cell phone to call Patrick and two other people and told them to come to the scene. Andrews told Crosby to call the people back and tell them not to come, as he "had [his] hands full. . . . [and didn't] need anybody else [t]here[.]"

As he was "dealing with" Crosby and Headley and trying to help the back-up officer locate the scene, Andrews noticed a person quietly walk out of a dark wood line and onto Headley's property, toward the group. The person, later identified as Patrick, was holding up what Andrews subsequently determined was a cell phone. Patrick, who lived in a camper on Crosby's property, did not say anything but was recording the incident with the phone; Andrews did not know Patrick prior to this incident.

Andrews believed he had "a volatile situation with everything else - guns, knives, whatnot - I got it all and he shows up. So I don't know what he's doing." It was dark out, and Andrews, considering it "a safety issue," viewed Patrick as

3

"another threat." Headley claimed the property was his and stated that he did not want Patrick on his property.

Andrews told Patrick "not to approach, not to come any further." Unsure of whether Patrick had heard him, Andrews approached Patrick and told him he was conducting an investigation and that Patrick needed to leave. Patrick said he was recording Andrews; Andrews deposed that he did not care that Patrick was recording the incident because his own camera was also recording it and "[p]eople do it all the time." Patrick took one step backward and asked, "[i]s that good enough?" Andrews replied, "[n]o, you need to leave[.]" Patrick took a second step backward and asked if that was good enough. Andrews replied that it was not and again told Patrick to leave, saying that Patrick was not involved in the dispute and that if he did not leave the property he would be arrested for obstruction. When Patrick still refused to leave, Andrews handcuffed and arrested him for obstruction.

Andrews deposed that Patrick was not involved in the dispute, that he was interfering with the investigation, that the situation was unsafe, and that he thus needed to be removed from the scene. Patrick deposed that Andrews did tell him to leave the property, but that he was standing "far away" while Andrews was investigating the dispute; that Patrick believed he had permission to be on the

property as he was friends with both men and had been on Headley's property earlier that day; and that as Patrick "was walking up," Andrews threatened to "take everybody to jail."

1. Patrick contends that the trial court erred by granting summary judgment to Andrews on the basis of qualified immunity. He argues that his arrest violated his Fourth Amendment rights because there was no probable cause that he was committing any crime. Patrick claims that Andrews actually arrested him for recording the incident, when he had a right to record the event under the First Amendment. He adds that the obstruction charge was "terminated in his favor" (though he does not elaborate or point to any evidence in the record to support that assertion).

The Fourth Amendment protects individuals from unreasonable searches and seizures. *Skop v. City of Atlanta*, 485 F3d 1130, 1137 (II) (A) (11th Cir. 2007). An arrest is a seizure of the person, and the reasonableness of an arrest is determined by the presence or absence of probable cause for the arrest. Id. "Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances." *Kingsland v. City of Miami*, 382 F3d 1220, 1226 (III) (A) (11th Cir. 2004).

"An arrest without probable cause is unconstitutional, but officers who make such an arrest are entitled to qualified immunity if there was *arguable* probable cause for the arrest." *Jones v. Cannon*, 174 F3d 1271, 1283 (III) (C) (11th Cir. 1999) (emphasis supplied). Arguable probable cause exists "if a reasonable police officer, knowing what [Andrews] knew, could have believed there was probable cause for the warrantless arrest." Id. Showing arguable probable cause does not require an arresting officer to prove every element of a crime; that "would negate the concept of probable cause and transform arresting officers into prosecutors." *Scarbrough v. Myles*, 245 F3d 1299, 1302-1303 (11th Cir. 2001). "The validity of [an] arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U. S. 31, 36 (III) (99 SCt 2627, 61 LE2d 343) (1979). "[T]he kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest." Id.

Patrick was arrested for obstructing an officer. OCGA § 16-10-24 (a) provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor." "Law enforcement officers have a duty to preserve public order, to

6

maintain the peace, and to protect lives, persons, property, health and morals." *Harris v. State*, 276 Ga. App. 234, 236 (1) (622 SE2d 905) (2005). The obstruction statute is sufficiently broad "to cover actions which might not be otherwise unlawful, but which obstructed or hindered law enforcement officers in carrying out their duties." *Hudson v. State*, 135 Ga. App. 739, 742 (2) (218 SE2d 905) (1975). Notably, this Court has found obstruction in cases with facts similar to the incident in the instant case. See, e.g., *West v. State*, 296 Ga. App. 58, 61-62 (2) (673 SE2d 558) (2009) (evidence of obstruction sufficient where investigating officer had repeatedly asked defendant to leave scene when victim said she was afraid of him, officer advised defendant that failure to comply would result in arrest, and defendant continued to speak to officer and ignore his requests), overruled in part on other grounds at *Worthen v. State*, 304 Ga. 862, 874 (3) (e) n. 8 (823 SE2d 291) (2019); *Harris*, supra (where officers responding to a disturbance call in a hospital emergency room attempted to restore order by directing defendant to wait for nurse's authorization to enter hospital treatment area and to "back off," but defendant failed to comply with officer's lawful command, defendant committed crime of misdemeanor obstruction). Viewing the evidence most favorably to Patrick as respondent on summary judgment, Andrews had arguable probable cause to arrest Patrick for obstruction.

7

Here, it was undisputed that Andrews was the lone officer on the scene of a volatile situation. It was dark outside, and he was in a remote area. One of the parties had stated that the neighbors might shoot each other, the neighbors had weapons on or near them, and the back-up officer was lost and asking Andrews for directions. Andrews had his "hands full," and Crosby was phoning people and telling them to come to the scene. Patrick emerged from the tree line onto Headley's property without speaking, and refused to leave after Andrews told him repeatedly to do so. Based on the totality of the circumstances, we find as a matter of law that Andrews had arguable probable cause to arrest Patrick for misdemeanor obstruction for hindering his ability to investigate the disturbance. Accordingly, Andrews is entitled to qualified immunity. See generally *Gold v. City of Miami*, 121 F3d 1442, 1446 (III) (A) (11th Cir. 1997) (officers were entitled to summary judgment based on qualified immunity where they had arguable probable cause to arrest defendant for disorderly conduct, even though they lacked actual probable cause); *Brown v. State*, 320 Ga. App. 12, 13-14 (739 SE2d 32) (2013) (lone officer on scene of traffic stop had probable cause to arrest defendant for obstruction where he repeatedly refused to obey officer's commands to return to his vehicle, which commands officer made for his own safety); *Harris*, supra; *Imperial v. State*, 218 Ga. App. 440, 441 (461 SE2d

596) (1995) (evidence of obstruction was sufficient where defendant refused to obey lawful command to lie on the ground when officers attempted to secure a crowded area during the execution of a search warrant in connection with a drug investigation, as his refusal had the effect of hindering the officers);.

2. Patrick contends that the court erred by granting summary judgment to Andrews based on official immunity for his state law claims ("false arrest, wrongful imprisonment, malicious prosecution, negligence and battery") because Andrews arrested him without arguable probable cause. However, as discussed in Division 1, Andrews did have arguable probable cause to arrest Patrick for obstruction.

Moreover, Andrews is entitled to official immunity because Patrick has not shown that Andrews, while performing a discretionary act within his official functions, acted with actual malice or an intent to injure. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d) ("[A]ll officers and employees of the state or its departments and agencies . . . may be liable for injuries and damages . . . if they act with actual malice or with actual intent to cause injury in the performance of their official functions."); *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001) ("The doctrine of official immunity . . . offers public officers and employees limited protection from suit in their personal capacit[ies]. Qualified immunity protects individual public

9

agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption.") (footnotes and punctuation omitted); *Mercado v. Swoope*, 340 Ga. App. 647, 650 (798 SE2d 291) (2017) (because the decision to make a warrantless arrest is a discretionary act within the scope of the officer's official functions, a defendant is insulated from suit unless there is evidence that he acted with actual malice or intent to injure); *Selvy v. Morrison*, 292 Ga. App. 702, 704-706 (665 SE2d 401) (2008) ("a deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiff"; "[e]vidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity, nor is proof of ill will, unless the ill will is combined with the intent to do something wrongful or illegal.") (citation and punctuation omitted).

The trial court did not err in granting summary judgment to Andrews based on official immunity. See *Selvy*, supra at 707.

3. Patrick contends that Sheriff Talton is liable pursuant to 42 USC § 1983 because Deputy Andrews admitted that he was following Talton's policies when he arrested Patrick in violation of Patrick's constitutional rights.[1]

> A warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim. The existence of probable cause, however, is an absolute bar to a section 1983 action for false arrest. Probable cause to arrest exists where the facts and circumstances within the officer[']s knowledge and of which [he] had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed. . . .[P]robable cause must be judged not with clinical detachment but with a common sense view to the realities of normal life. When the facts are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate.

*Marx v. Gumbinner*, 905 F2d 1503, 1505-1506 (11th Cir. 1990) (citations and punctuation omitted). Probable cause for any offense will bar a false arrest claim; it need not be the offense that was announced at the time of the arrest. *Bailey v. Board of County Commrs.*, 956 F2d 1112, 1119 (III) (A) (1) n. 4 (11th Cir. 1992).

---

[1] 42 USC § 1983 relevantly provides that every person who, under color of statute, custom or usage of any state, subjects or causes to be subjected, any citizen of or person within the jurisdiction of the United States to the deprivation of any rights secured by the Constitution and laws, shall be liable to the party injured in an action at law.

"[P]robable cause requires only a probability or substantial chance of any criminal activity." *Illinois v. Gates*, 462 U. S. 213, 243 (IV) n. 13 (103 SCt 2317, 76 LE2d 527) (1983).

In this case, Andrews had probable cause to arrest Patrick for obstruction. As set out in Division 1 above, the facts and circumstances within Andrews's knowledge were sufficient to warrant a person of reasonable caution to believe that the offense of obstruction had been or was being committed. In addition, Andrews had probable cause to arrest Patrick for criminal trespass. See OCGA § 16-7-21 (b) (3) (pertinently providing that a person commits the offense of criminal trespass when he or she knowingly and without authority remains upon the land or premises of another person after receiving notice from the owner, rightful occupant, or an authorized representative of the owner to depart). As the evidence shows no violation of Patrick's constitutional rights, his section 1983 claim fails as a matter of law. See generally *Blue v. Lopez*, 901 F3d 1352, 1357 (III) (11th Cir. 2018). The trial court properly granted summary judgment to Talton on this claim.

*Judgment affirmed. Miller, P. J., and Coomer, J., concur*.